## GIBSON v. HICKS.*

### No. 2596.

Court of Civil Appeals of Texas. El Paso.
March 3, 1932.

Rehearing Denied March 24, 1932.

*Second motion for rehearing denied April 7, 1932.

Isaacks & Lattner, of El Paso, for appellant.

Wilchar & Worrell, of El Paso, for appellee.

PELPHREY, C. J.

This suit was brought by H. E. Hicks, assignee of his mother, Mrs. Catheryn Hicks, against M. P. Gibson, to recover the sum of $350, alleged to be the amount due as the statutory penalty paid as usury on a loan of $700.

Appellee alleged that in September, 1930, Mrs. Catheryn Hicks borrowed $700 from appellant, Gibson, said money to be due and payable on October 13, 1930; that appellant exacted of Mrs. Hicks, and she agreeing to pay him, the sum of $100 as interest for the use of said $700 for said time; that at the expiration of said time Mrs. Hicks requested of appellant the extension of the time of payment to November 20, 1930, which extension was granted upon the agreement of Mrs. Hicks to pay to appellant as interest on said loan as extended an additional sum of $75; that on the date of the extension of said loan appellant demanded of Mrs. Hicks a note for the amount of $700, together with the amount of said sums of interest, and that said note be secured by a chattel mortgage; and that, in compliance with said demand, Mrs. Hicks, on October 13, 1930,

executed and delivered to appellant her note payable to appellant in the sum of $875, due and payable on November 20, 1930, and to secure said note executed and delivered to appellant on October 29, 1930, a chattel mortgage on certain household furniture and fixtures, together with two automobiles, which we designate as one Durant motor sedan and one Oakland sport coupé. Appellee alleged the assignment and transfer to him by Mrs. Hicks of all her rights in the cause of action herein alleged.

Appellee alleged that on February 17, 1931, appellant demanded payment of the said sum of $875, and threatened foreclosure of said mortgage; that on the last-mentioned date appellant received said two automobiles at an agreed price or value of $875 in full settlement of said loan and said interest. Appellee alleges that said transactions, with the receipt and payment of $175, was usurious to appellee's damage in the sum of $350, for which he sues.

Appellant answered, so far as it is necessary to state, by general denial, and by special answer, denies that he ever loaned Mrs. Hicks $700 or any other amount at a usurious rate of interest; that in the fall of 1930 Mrs. Hicks was indebted to him, and insisted upon giving him a note secured by a mortgage on two automobiles and household furniture and fixtures; that he wrote a note for Mrs. Hicks to sign for the principal sum of $800, and that without solicitation on his part Mrs. Hicks insisted on and did execute said mortgage on said automobiles and household furniture therein described and specified, the indebtedness for which said mortgage was executed at $875, whereas she owed him only $800, and, upon learning of the indebtedness indicated in said mortgage, he, at her request, changed said note to correspond with the mortgage, but never at any time did he consider the $75 an indebtedness, nor claim same as an indebtedness, and changed said note only for the purpose to correspond with said mortgage; that Mrs. Hicks thereafter turned her affairs over to J. H. McBroom with a power of attorney to settle her affairs; that thereafter a controversy arose between McBroom and appellant as to the amount due appellant by Mrs. Hicks, McBroom contending that appellant had received usurious interest from Mrs. Hicks, which was denied by appellant; that McBroom, for Mrs. Hicks, proposed to settle all matters between them by appellant accepting in full settlement of all demands the two automobiles, and thereby releasing the indebtedness of Mrs. Hicks; that appellant agreed to said proposition of settlement, and, in consideration of Mrs. Hicks' waiving all claims for usurious interest, accepted said two automobiles in full settlement, all in compromise of their differences and contentions, and alleged said

automobiles to be of value not exceeding $500.

Appellee answered by general denial, and alleged that by a contract and agreement appellee delivered to appellant the two automobiles at an agreed value of $875 in full settlement of said loan to Mrs. Hicks.

On the trial, the case submitted to the jury on special issues, it was found: Mrs. Hicks, in September, 1930, borrowed $700 from appellant, to be returned on October 13, 1930, and agreed to pay appellant $100 as interest on the $700 for the time inquired about; that on October 13, 1930, Mrs. Hicks agreed to pay appellant $75 as interest on the loan of the $700 to October 13, 1930; that the market value of the Oakland sport coupé was $400, and the market value of the Durant sedan was $575. "Question No. 8: Was there a settlement between Mrs. Catheryn Hicks, represented by J. H. McBroom, and the defendant, Gibson (appellant), in which all matters in controversy between the defendant and the said Mrs. Hicks were settled? Answer 'yes' or 'no.'" The jury answered, "No."

We understand question 8 referred to the controversy as to whether the charge of usury for the loan of the $700 entered into the settlement.

On the finding of the jury, the court entered judgment in favor of appellant in the sum of $350, being double the amount of the interest paid on the loan, and appellant prosecutes this appeal.

## Opinion.

Appellant moved for an instructed verdict, and also for judgment after verdict, and assigns error to the trial court's overruling thereof.

In a consideration of this case, the first question presented is: Can parties to a usurious transaction, by compromise or settlement, agree, in advance of payment of the usury, that the payer shall not assert any claim therefor against the party collecting it? There can be no doubt that, after usury has been collected, a compromise or settlement of the claim for a recovery of the usurious interest so collected and the statutory penalty may be entered into and be binding on the parties. This is well established in Gilliam v. Alford, 69 Tex. 271, 6 S. W. 757; Stout v. Ennis Nat. Bank, 69 Tex. 392, 8 S. W. 808; Cotton v. Beatty (Tex. Civ. App.) 162 S. W. 1007; Fontaine v. Davis & Powell (Tex. Civ. App.) 164 S. W. 386, but those decisions will not control the disposition of the question here. The only case which seems to support the contention of appellant that a settlement may be entered into before the usury has been paid is that of Whitlow v. Culwell, 16 Tex. Civ. App. 266, 40 S. W. 642, 643. A study of that decision, how-

ever, reveals that the court held that a valuation of the property turned over had not been agreed upon by the parties nor had its value been proved in the case. The court said: "The consideration of $7,000 recited in the deed was by virtue of an agreement between the parties, but no valuation of the property was in fact agreed upon, and the record does not disclose its value. * * *"

The court then, after citing the article providing for the collection of the penalty for usury, further said: "It devolved upon the plaintiff, suing to recover a penalty, to bring himself strictly within the terms of the statute."

The court was evidently referring to the failure of plaintiff to prove that the property turned over to defendant was worth such an amount as showed that he had collected usury or that such a value had been agreed upon by the parties. Therefore, the later holding of the court to the effect that the compromise and settlement of the litigation in which usury had been pleaded had the effect of eliminating the usury feature from dealings between the parties in their inception was unnecessary and dicta.

It has not been disputed that the charge of usury in a transaction could be established by the acceptance of property instead of money, and, if here, the value of the property received by appellant exceeds the amount due him by Mrs. Hicks and lawful interest thereon, then appellant would be liable for the penalty the same as if he had received the equivalent of such value in money.

If, however, appellant had accepted the two cars in settlement of his claim, and the value thereof had not exceeded the amount due and lawful interest thereon, then he would have collected no usury. On the other hand, if there had been an agreement between the parties that the two automobiles should be received at an agreed value, and that value had not exceeded the amount due and lawful interest, appellee would be estopped, in our opinion, to later come in and show that the market value of the cars was greater than the amount agreed upon. This would, we think, be true by reason of the fact that the law will not permit a person who agrees to sell property at an agreed price to, in the absence of fraud or mistake, later dispute that price.

We are also of the opinion that, if there be a bona fide dispute as to whether a particular transaction is tainted with usury, the parties may settle such dispute and compromise their differences. For such a compromise to be effective, however, it must appear that there was a bona fide dispute as to the existence of usury, that the parties had a doubt as to its existence, and the resolution of such doubt must have been a point in the settlement. Parker v. Fulton Loan & Building Ass'n, 46 Ga. 166.

■ In the case of a usurious contract, the debtor always agrees to make the usurious payment, and we fail to see how it can be said that a subsequent agreement of the debtor to pay usurious interest, even though it be in the nature of a compromise or settlement, would preclude him from asserting a claim for the recovery of the usurious interest and the penalty after the usury has been collected by the creditor. Such an agreement would, in the first place, be founded on no consideration, the debtor having received nothing for his so agreeing, and the creditor would merely be surrendering a part of a sum which he had no lawful right to collect.

Does the present case come within the doctrine announced in Parker v. Fuller Loan & Building Ass'n, supra, that is, do the facts here show that there was a bona fide dispute between the parties as to the existence of usury in the original transaction between appellant and Mrs. Hicks?

Mr. McBroom, who represented Mrs. Hicks in the settlement, testified relative to the negotiations:

"I had conversations with Mr. Gibson. He did not make any claim that this seven hundred dollars he let Mrs. Hicks have was for an investment. He told me on this individual matter that he had loaned her seven hundred dollars, and had taken a check, as I recollect, for eight hundred and seventy-five dollars, and he learned that she was becoming involved and he asked for the chattel mortgage and it was given and he put it of record. There was no claim made by Mr. Gibson at all that it was any other than a straight loan to her, that is right as far as this is concerned. * * *

"As to whether, now in this, when this was done, when this was signed, when any settlement was made, I never signed any settlement in which I released Gibson from usurious interest which he charged in that transaction or any other transaction, well, I just gave him those two cars in consideration in turning this over, that is all he got, he was to be free."

"It was understood between you and me, you as representative of Mr. Gibson, and me as representative of Mrs. Hicks, that this transfer of the cars to him and him transferring the note to whoever I said, together with the mortgage, was a settlement of all matters between him and Mrs. Hicks, Gibson and Mrs. Hicks; that was my understanding; I thought I was settling Gibson's matters. As to whether I thought that I was settling the Gibson matter, but was settling the mortgage, no, I was settling the Gibson matter. I can explain how that was, the court overruled it, and it was not admissible, I contended that Gibson didn't have that much money coming; I claimed that he owed Mrs. Hicks money on other transac-

tions, and he should not collect the full eight hundred and seventy-five.

"You contended that he should collect all that and had a right to foreclose the mortgage; * * * I also believed they were only contending that seven hundred dollars was loaned on this last transaction. I feel sure that is right. As to whether I didn't understand from Mr. Gibson and you as Mr. Gibson's representative, his contention was— and understand you don't know whether this was mentioned in my presence or not, you think it was—that at the time she got the money, whether it was a loan or investment, that he advanced seven hundred dollars and she gave him a check for eight hundred dollars, that when that check was not paid that he demanded of her a note and mortgage and she gave him a note for eight hundred dollars, and then executed a mortgage specifying the note at eight hundred and seventy-five dollars, and he never claimed the seventy-five dollars at all, well, no that was never mentioned."

After having been thus questioned as to just what was in dispute between himself and Judge Isaacks, he further testified: "I have called this a loan of seven hundred dollars, and there was never any contention whatever by Mr. Gibson that it was anything else but a loan in this transaction."

It seems clear that, if Gibson in the negotiation of the settlement was only claiming that the transaction was a loan of $700, and he was claiming the right to collect $875 by virtue of that loan, then there could have been no bona fide dispute as to the transaction being tainted with usury. On the other hand, if the transaction was as testified to by Gibson, there would be no usury, but, from McBroom's testimony, no such contention was made to him.

Judge Isaacks, it is true, testified that "McBroom was contending there was an element of usury in the note and I was contending there was not and we finally agreed upon a settlement of the whole matter."

■ From what has been said there was a conflict in the testimony as to whether there was a bona fide dispute between Judge Isaacks and Mr. McBroom as to the existence of usury in the original transaction, and a question which the jury should have passed upon.

The proposition advanced by appellant that a verdict should have been instructed in his favor because of the evidence being uncontroverted that all matters pertaining to the $700 loan, including the claim of penalty for usurious interest, was settled and compromised, thereby estopping appellee from recovering, is without merit.

Appellant's motion for judgment, however, should have been granted.

Appellee based his right of recovery upon the fact of an agreed value upon the automobiles, which fact, we think, finds no support in the evidence.

There is nothing in the record to show that Judge Isaacks and Mr. McBroom ever agreed as to the value at which they were to be accepted by Gibson, and it is apparent that they are the ones who concluded the agreement. After they had reached their agreement, there was nothing to be done except a delivery of the cars to appellant, and that agreement did not require any receipt from him to terminate the transaction.

It clearly appears that appellee, merely acting as agent in the delivery of the cars, took it upon himself to request from appellant a receipt for the cars, inserting therein a statement that they were received at an agreed price of $875. In view of the fact that the settlement had been theretofore consummated, that appellee had nothing to do with the settlement, and that, under the facts here disclosed, appellant was not called on to execute any receipt as his part of the settlement, we are of opinion that the receipt was not evidence of the fact that any price had been agreed upon in the settlement.

If there had been any dispute as to whether or not a value had in fact been agreed upon, then the receipt might have been admissible, but under the facts here we fail to see its probative force.

Because the findings of the jury were not upon the issues presented in the pleadings of appellee, the motion for judgment was erroneously overruled, and the judgment is therefore reversed and the cause remanded.

Justice WALTHALL concurs in the holding that the judgment should be reversed and the cause remanded, but does not concur in the reasons assigned.

On Rehearing.

Appellee contends that we erred in the original opinion in holding that the findings of the jury were not upon the issues presented by appellee's pleading, that appellant's motion for judgment should have been granted by the trial court, and that the signed receipt did not support appellee's allegation that there was an agreed value upon the automobiles. He also argues that the court properly submitted the issues presented in the pleadings of both parties.

With this statement we cannot agree. Appellee himself sought a recovery on the theory, and the theory only, that the automobiles had been accepted at an agreed value of $875. Appellant denied such an agreement, and defended the suit on the theory that the settlement constituted a satisfaction of Mrs. Hicks' claim against appellant for usury.

While it is true that in the allegations of appellant as to the agreement there appears an allegation that the cars were not worth an amount exceeding $500, yet this is made in connection with and incidental to the pleading of the settlement, and does not, in our opinion, put in issue the question of market value of the cars.

We are further of the opinion that, in a suit to recover the statutory penalty for usury (Rev. St. 1925, art. 5073), the action being quasi criminal, the plaintiff must allege and prove such facts as will bring him strictly within the statute. Whitlow v. Culwell, 16 Tex. Civ. App. 266, 40 S. W. 642; Rosetti v. Lozano, 96 Tex. 57, 70 S. W. 204, 205.

If we be correct in this, then appellant, before he could recover, would have the burden of proving that the cars had been accepted at an agreed value of $875, in accordance with his allegations.

In rendering judgment the trial court's duty was to render only such judgment as found support in the pleadings, regardless of what the facts might show.

We take it, from the fact that the trial court submitted the issues on market value, that he did not consider the evidence sufficient to support a recovery on the theory of an agreed value, and therefore the judgment rendered was based upon the jury's findings as to the market value. There being no such issue raised by the pleadings, it follows that the judgment was erroneously rendered.

This error is apparent from the record, we think.

In reference to the sufficiency of the receipt to show that the cars were accepted at an agreed value, appellee presents the following argument: "The receipt signed by Gibson was signed at the request of an interested party, appellee herein, who was the owner of one of the cars. The receipt was part of the res gestae and Henry Hicks, the owner of one of the cars and the son of Mrs. Hicks, could have, if he wanted to, refused to deliver the cars and certainly would have had the right to know at what price the cars, or his car, was being received by the appellant. It was perfectly natural and right. The appellee, a married man, in this case was the son of Mrs. Hicks and the owner of one of the cars. He might expect from his mother, reimbursement for the settlement of her debt by giving up a portion of his property and he not only was within his rights but acted sensibly in having Gibson execute the receipt for the cars at the time that they were delivered. The question that we are discussing seems so clear that we cannot understand how the Chief Justice can see

that this, the appellee's theory of the case, finds no support in the evidence."

Upon this argument we are asked to reverse the former judgment and affirm the judgment of the trial court, in spite of the fact that the car which appellee claims belonged to him was in his mother's name, was included in the mortgage to Gibson, a bill of sale to which had, with his consent, been executed to Gibson by Mr. McBroom before the receipt was executed by Gibson.

The many reasons assigned by counsel, why appellee was entitled to and so sensibly demanded the receipt in question, are not borne out by the evidence of his own client, who admitted, on cross-examination, that the reason he demanded the receipt and wrote into it that the cars were being accepted at a value of $875, was that it might be used by him as a basis for this suit.

How can it be said that the execution of the receipt by Gibson and its acceptance by appellee constituted an agreement between appellant and Mrs. Hicks that the cars were accepted at an agreed value?

Mrs. Hicks, not appellee, owed Gibson the money, and the dispute arose between them, and the settlement was made by their representatives. There is nothing in this record to show that either of them was representing him. The only part he had in the matter was that Mrs. Hicks had instructed McBroom that one of the cars should not be disposed of without his consent, which he gave to McBroom before the receipt was executed. Appellee was not representing his mother in the settlement, and, after he had given his permission to McBroom to dispose of the automobile, was a total stranger to the transaction, and, McBroom having executed to Gibson a bill of sale to the two cars under his authority, and there having been no receipt called for in the settlement, Gibson was not called upon to execute any receipt therefor, and certainly one executed at the request of appellee, a stranger to the agreement, would not be sufficient to show that, when Gibson agreed to accept the cars in the settlement, he agreed that such acceptance was based upon an agreed value of $875.

■ It is, we think, well settled that, when a case has been tried upon an erroneous theory, the case should be reversed and remanded. 3 Tex. Jur. § 857; Keevil v. Ponsford (Tex. Civ. App.) 173 S. W. 518; Missouri, K. & T. R. Co. v. Langford (Tex. Civ. App.) 201 S. W. 1087; City Nat. Bank v. Eastland County (Tex. Civ. App.) 12 S.W.(2d) 662; Story v. Conn (Tex. Civ. App.) 27 S.W.(2d) 909.

There can be no question but that the theories of the parties in the court below were not the theories upon which this case should have been tried, under the facts; therefore our judgment reversing and remanding the case was a proper one.

The motion for rehearing is therefore overruled.