### FERGUSON v. MARTIN.
### No. 11444.

Court of Civil Appeals of Texas. Dallas.
April 7, 1934.

Rehearing Denied May 5, 1934.

Renfro & McCombs and James A. Kilgore, all of Dallas, for appellant.

McCormick, Bromberg, Leftwich & Carrington and W. C. Gowan, all of Dallas, for appellee.

LOONEY, Justice.

D. R. Martin sued H. W. Ferguson to recover double $261.56, as usurious interest paid on a loan of $3,000, and $45.65, the unpaid portion of said loan. Plaintiff alleged, in substance, that, about February 19, 1925, he obtained a loan of $3,000 from defendant, for which he executed a note due November 1, 1925, bearing 8 per cent. interest per annum; that to obtain the loan defendant required plaintiff to pay $75 as an extra interest charge; that of the money borrowed defendant paid plaintiff only $2,-864.35, deducted $15 for preparation of papers, also deducted $75 as extra interest, retaining the sum of $45.65; that, in addition, plaintiff paid defendant $186.56, 8 per cent. interest provided in the note, totaling $261.56, interest paid, being in excess of 10 per cent. for the use of the money borrowed.

Defendant denied that he either exacted or received $75 as extra interest, or that he either exacted or received interest on the loan in excess of 8 per cent., as provided in the note; that, at the time plaintiff applied for the loan of $3,000, he was indebted to the Union Central Life Insurance Company in the sum of $14,000 and solicited a loan of $17,000 from the Dallas Joint-Stock Land Bank, of which defendant was president, for the purpose of taking up, at maturity, both the $14,000 loan with the Union Central Company and the $3,000 loan with defendant, and to that end made formal application to the Land Bank for the loan; that, on consummating the $3,000 loan, defendant paid plaintiff $2,864.35, i. e., paid that amount to a bank at Arlington, for and on behalf of plaintiff, retained $17.35 for the preparation and recording of loan paper, also $117.-50 to cover expenses of the anticipated loan of $17,000, for which application was pending with the Land Bank; that neither amount was retained as interest on the $3,-000 note, and, as the contemplated loan to plaintiff by the Land Bank was never consummated, the amount retained ($117.50) to pay expenses incident thereto was never used and is still in the hands of defendant.

After proper definitions, the court submitted issues embodying the respective contentions of the parties which were answered by the jury in plaintiff's favor, as follows:

"Question No. 1. Do you find from a preponderance of the evidence that the plaintiff Martin agreed to pay to the defendant Ferguson the sum of $75.00 as interest in addition to the 8 per cent, provided for in the note? Answer Yes or No. Answer: Yes.

"Question No. 2. Do you find from a preponderance of the evidence that the defendant Ferguson collected from the plaintiff Martin the sum of $75.00 as interest, in addition to the 8 per cent, provided for in the note? Answer Yes or No. Answer: Yes.

"Question No. 3. Do you find and believe from a preponderance of the evidence that the defendant Ferguson retained out of the $3000.00 loan $45.65 of plaintiff Martin's money? Answer Yes or No. Answer: Yes.

"Question No. 4. Do you find from a preponderance of the evidence that the defendant Ferguson retained $117.50 of the $3000.-00 loan he made plaintiff Martin to cover the expense which the Dallas Joint-Stock Land Bank would charge Martin in the event it made him a loan of $17,000? Answer Yes or No. Answer: No."

On these findings, the court rendered judgment in favor of plaintiff for $805.72, being the aggregate of the amounts sued for, plus interest, from which defendant appealed.

Appellant urges the proposition that, in order to recover the penalty provided by statute (Rev. St. 1925, art. 5073) for collecting usurious interest, it is necessary to plead and prove that the obligor contracted to pay, and did in fact pay, interest in excess of 10 per cent. per annum for the use of the money borrowed, insisting in this connection that appellee failed in both, that is, to either allege or prove such a contract; hence the requested verdict in his favor should have been directed.

■ We readily assent to the correctness of appellant's proposition that, in order to recover in the statutory action, it is necessary to allege and prove that, as a part of the loan contract, the complaining party agreed to, and in fact did, pay for the use of money more than 10 per cent. interest.

■ However, we think the issue was properly pleaded; the petition alleged that, "In order to obtain the loan, the defendant required plaintiff to pay Fifteen Dollars ($15) to him for the purpose of preparing the loan papers, and further required plaintiff to pay him Seventy-Five Dollars ($75) for the purpose of making the loan, which sum of Seventy-Five Dollars ($75) was in fact an extra interest charge, and was so understood by both parties, and was exacted of plaintiff, and was paid by plaintiff, to defendant at the time of obtaining the loan; * * * *" therefore overrule the contention that the issue was not properly pleaded.

■ Appellant's main contention is that the evidence failed to show that appellee agreed to pay interest in excess of 10 per cent. per annum for the use of the money borrowed.

Appellee's testimony bearing on this phase of the case is to the effect that, when appellant was first approached for the $3,000 loan, he informed appellee that a charge of $15 would be made for the preparation of loan papers, to which appellee agreed; that, on the day the loan papers were executed, and immediately thereafter, but before leaving, appellee again asked appellant, "Do you know exactly how much the charge is? He (appellant) said, I will charge you $75, and the reason I am charging you the $75 is because you have to have the money." On cross-examination, appellee was asked and answered the following questions:

"Q. As I gathered a moment ago you never did agree to pay this $75.00? A. Didn't pay it?

"Q. Didn't agree to pay it. That wasn't part of your agreement? A. I just never said anything and he (appellant) just had the paper signed and I went on out.

"Q. That wasn't part of the agreement? A. It was part of the agreement then to pay this $75.00; I asked him what he was charging me and that was the charges for the $3,000. * * *

"Q. I asked you if you agreed to it? A. You might say I did, because I didn't say anything more.

"Q. But, did you? A. I walked out and I just went downstairs with my wife and said, 'We done signed the paper, I guess we will have to stand for it.' "

If the item of $75 was exacted and paid as interest for the use of the $3,000 borrowed, the transaction is usurious; so the question turns on the sufficiency of evidence to establish the alleged agreement.

When told that he would be required to pay the additional amount of $75, appellee made no reply; however, the note and trust deed, although executed, were under his control and the transaction could have been halted, as no part of the money borrowed had been disbursed, so, if under the circumstances appellee assented to the arrangement, it must be inferred from his silence.

May assent to a proposition be manifested by silence? In Mactier v. Frith, 6 Wend. (N. Y.) 103, 21 Am. Dec. 262, 272, the court said, "Keeping silence, under certain circumstances, is an assent to a proposition." In 13 C. J. p. 276, § 74, the doctrine is announced that "Acceptance of an offer may often be inferred from silence," and in 6 R. C. L. p. 606, § 28, it is said that "There are various modes which are equally conclusive upon the parties. Under certain circumstances silence is an assent to a proposition."

In view of this doctrine and the conflicting evidence with which the jury was confronted, we are unwilling to disturb their findings to the effect that appellee agreed to pay and did pay appellant the sum of $75, as interest in addition to the 8 per cent. per annum provided in the note, thus rendering the transaction usurious. We therefore overrule appellant's contention and affirm the judgment of the lower court.

Affirmed.

BOND, Justice (dissenting).

In registering my dissent, the conclusion is firmly reached that the lender did not intend to nor did he exact more than legal interest from the borrower and that the borrower did not contract to pay usurious interest. On its face, the contract does not import usury; if the facts and circumstances of the case as to the borrower are intended to render the transaction usurious, but as to the lender are intended not to do so, the transaction must be regarded as innocent. The burden of proving that a transaction is infected with usury rests upon him who attacks it, and that fact must be established by at least clear and convincing evidence.

At the inception of the contract, Martin made written application to Ferguson for a loan of $17,000, stipulating therein that $3,000 was to be advanced at once and $14,000 to be advanced later, with a specific charge of $117.50 for incidental expenses. The evidence discloses that the $3,000 was to be applied to a note due a bank at Arlington, Tex., and the $14,000 was to be later advanced to take up a loan of the Union Central Life Insurance Company, due November 1, 1925. Martin executed and delivered his note for $3,000, bearing 8 per cent. interest, with attorney's fee in case of default, and a deed of trust on land to secure its payment. Of the $3,000, Ferguson advanced to the Arlington Bank $2,864.35, paid $15 for title expense, and $2.35 for recording of the deed of trust. The $14,000 loan was not consummated by Martin, and the reasons for such failure are immaterial to the issues involved in this case. Martin placed the $14,000 loan with another lender, thus $75 of the $117.50, retained by Ferguson, is the essence of the contention that the transaction involving the $3,000 loan is tainted with usury.

Martin testified that he signed the application for the $17,000 loan under circumstances not to be a binding obligation as to the placing of the deferred loan for $14,000, and this became a sharply controverted issue involving the right of Ferguson to retain the $117.50. Such contest, in my opinion, bears forcibly on the issue as to the intent and purpose of the lender in retaining the $117.50, at which time no controversy had arisen as to the placing of the $14,000 loan. Ferguson began his negotiations for the deferred loan, making application to the company of which he was president, sent inspectors to view the property involved as security, thus obviously expected to have the loan placed with him, and,

in keeping with that expectation, retained the $117.50 to cover incidental expenses.

The testimony is undisputed that Ferguson paid the Arlington Bank $2,864.35, $15 for title expenses, $2.35 for recording the deed of trust, and still holds the $117.50 in accordance with Martin's written application; these items make up the $3,000. Martin paid back only the $3,000, with 8 per cent. interest for the time the loan had run, with attorney's fee for default at maturity. Can it thus be said that, under such circumstances and facts, the lender exacted of the borrower any part of the $117.50 as an extra interest charge on the $3,000 advanced? I think not.

The transaction to pay the $117.50 expense fee is evidently unaffected by usury. The usual and customary expense for making such loan does not carry such transactions into the category of an unlawful act. It is generally held that, while a lender has no right to exact more than the legal rate of interest, he may impose such conditions as will enable him to receive the principal of the loan and the lawful interest, without loss or expense. It is obvious, therefore, that a lender is under no obligation to bear the expense properly incident to a loan, but such expense may be fairly charged to the borrower; and, though the loan is at the full legal rate, it does not become thereby tainted with usury.

In view of Martin's contention that the agreement to make the loan had been abandoned, Ferguson may not have been justified in keeping the $117.50 as expense fee, for the negotiation of the $17,000 loan, but this could not give rise to a suit to recover a penalty for collecting usurious interest. In my opinion, the transaction bears no evidence whatever of the intention of the lender to violate the law. If, in fact, the retention of the $117.50 by Ferguson was not authorized under Martin's written application to pay the expenses necessary to complete the $17,000 loan, then Martin's cause of action is one for debt. The remedy is to correct the settlement, and not to forfeit the interest, if there was no contract to evade the statute. United States Mortgage Co. v. Sperry, 138 U. S. 313, 11 S. Ct. 321, 34 L. Ed. 969.

Was there a subsequent illegal contract? When Martin definitely decided to close the $3,000 loan, he asked Ferguson, "What would it cost him to get the money?". Ferguson said, "Oh, not much, just what it costs back in the office, about $15." Then Martin said, "That is alright, let me know and I will come back and sign them (the note and deed of

trust)." Martin had no further conversation with Ferguson until after the papers were signed and delivered; then, as he started to leave Ferguson's office, he said, "Do you know exactly how much the charge is?" Ferguson said, "I will charge you $75, and the reason I am charging you the $75 is because you have to have the money." Suppose the reply of Ferguson, fairly interpreted, did evidence an intent to exact of Martin an extra charge of $75, either as an interest or expense charge, could the pre-existing agreement to charge $15 be changed to $75 or the 8 per cent. interest covenant be added to by an extra $75 interest charge, without the consent of Martin, or, under such circumstances, could Ferguson exact of Martin the extra charges even if agreed to by Martin? In other words, suppose Ferguson, instead of having retained the $117.50, had brought suit against Martin for the $75, and it was admitted, in pleadings and proof, that the expense charge would be only $15 and the interest 8 per cent., could Ferguson have succeeded in such a suit? Certainly he could not. Or suppose, under the circumstances, Martin had brought suit for $75 less the $15, could he have recovered? In my opinion, he could. Martin admits, in pleadings and proof, that the expense charge was to be $15 and the loan was to bear 8 per cent., and Ferguson confesses that to be the agreement. Thus the contract was closed on that basis, and if, in fact, the lender Ferguson subsequently actually detained $75 out of the $117.50 as an extra interest or expense charge, it will not render usurious the previously valid contract. In 39 Cyc. 947, the rule is stated that "the mere fact that the lender, subsequent to the contract of loan, actually took or received more than the legal rate of interest does not render usurious a previous valid contract." This text is quoted with approval by the Eastland Court of Civil Appeals, in Continental Savings & Building Ass'n v. Wood et al., 33 S.W.(2d) 770, affirmed by the Supreme Court, 56 S.W.(2d) 641.

The testimony of Martin, considered alone and assumed to be true, demonstrates beyond the peradventure of a doubt that he did not intend to agree to a usurious charge. In answer to the question, if he agreed to the $75 charge, Martin answered: "You might say I did, because I didn't say any more. * * * I walked out and just went downstairs with my wife and said, 'We done signed the paper; I guess we will have to stand for it.'" If silence gave consent, under the circumstances, then the agreement to pay the $75 was evidently induced by an exigency of the borrower having previously signed the papers and the existence of an abandonment by the lender of a valid contract which he was bound to have performed, to wit, to charge only $15 expense and 8 per cent. interest for the loan. A contract made under such duress is voidable at the instance of the party to whom the duress is practiced, and may be rescinded and canceled. In 7 Tex. Jur. 897, the rule is stated that "Duress of such a character as in law is sufficient to over-ride the free will of the petitioner and induce him to perform an act he would not otherwise have performed, has been held to be a good ground for cancellation." I cannot assent to the proposition that Martin's silence, under the circumstances, involves an assent to the charge of $75. Furthermore, regardless of whether Martin assented to the charge, the statement of facts shows that Ferguson did not collect the $75 as an extra interest charge, made no demand for payment, and did not retain it from the money loaned, thus evidencing no intention to exact usury.

Taking the testimony at its worst aspect for the lender, it merely evidenced an intention to charge the $75 for expenses. The contracting parties at the time were discussing the expense charges. Ferguson had stated that the charge would be "about $15," an indefinite amount, and then Martin asked, "Do you know exactly how much the charge is?" and to this Ferguson said, "I will charge you $75. * * *" Does that indicate an extra interest charge? The interest was definitely fixed at 8 per cent.; thus there was no occasion for Martin to ask about the exact amount of interest. The reply could have alluded to nothing but the incidental expense charge. Nor can the reasons assigned by Ferguson for making the $75 charge —i. e., "because you have to have the money" —be construed to mean that the charge was for extra interest on the obligation. It must be borne in mind that the Arlington bank note was due, the obligation was stressing, and quick action needed; thus it might as readily have reference to the extra labor and expense to get the security in shape for the loan as to construe it into the intention of the lender to exact an unlawful charge. Usury is quasi criminal, and every intendment of the contracting parties should be indulged in favor of innocence, and he who would recover the penalty must bring himself within the terms of the statute. Gibson v. Hicks (Tex. Civ. App.) 47 S.W.(2d) 691;

Whitlow v. Culwell, 16 Tex. Civ. App. 266, 40 S. W. 642; Murray v. Railway Co., 63 Tex. 413, 51 Am. Rep. 650.

Under the circumstances, if in fact Ferguson did exact the $75 as an extra expense charge, or even an extra interest charge, Martin's cause of action involving the retention of the money against Ferguson is based upon a tort, and, the amount being below the jurisdictional amount of the district court, in the absence of any contract showing an illegal charge or retention of interest, my conclusion is that the judgment of the lower court should be reversed, and judgment here rendered that appellee take nothing by his action, without prejudice, however, to his right to institute and maintain a suit in the proper court for an overcharge or retention, or both, as the facts may warrant.