**Elnora RINYU et vir, Appellants,**

v.

**Homer C. TEAL et ux., Appellees.**

**No. A2178.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Dec. 19, 1979.

Rehearing Denied Jan. 23, 1980.

John V. Elick, Elick & Elick, Bellville, for appellants.

Sidney Levine, Houston, for appellees.

Before J. CURTISS BROWN, C. J., and MILLER and PAUL PRESSLER, JJ.

MILLER, Justice.

The question confronting us in this case is whether a deed, absolute on its face, coupled with an oral repurchase option in the grantor, was in reality a mortgage of a rural homestead, which mortgage provided for usurious interest. The court below held that it was such a mortgage. We reverse and render in part and modify and affirm in part.

The subject matter of the action is three tracts of land, comprising 103.80 acres in Austin County, which tracts were near the site of appellees' residence, and which were a part of their rural homestead. The three tracts were (a) an 11 acre tract, (b) a 15 acre tract having cloudy and uninsurable title, and (c) a 77.80 acre tract subject to a purchase money mortgage. The 77.80 acre tract had been posted for foreclosure on February 2, 1977, an event which appellees averted by the apparent sale to Appellant Elnora Rinyu on February 1, one day before the foreclosure date.

When he was unable to make the October, 1976, mortgage payment on the 77.80 acre tract, Appellee Homer C. Teal approached a Houston loan broker, one Magids, with whom he had had prior dealings, with a view to borrowing money on the property. Magids referred him to Attorney Vincent Bustamante who arranged the transaction with appellant. According to the documents drawn at the time, the Teals sold their interest in the three tracts to Mrs. Rinyu and leased the property back for six months for a rental of $300.00 for the entire term. Uncontroverted testimony at the trial indicates that the Teals were given an oral six months' option to repurchase the property at a premium of $1,500.00 over the $13,522.45 cash consideration paid by Mrs. Rinyu. At the same time, the Teals signed an affidavit disclaiming any interest in the subject properties other than as tenants.

This affidavit was drawn by Attorney Bustamante, while the deed and lease were prepared by a Bellville attorney, J. Lee Dittert, Jr. Dittert testified he asked Teal and Bustamante if the transaction was an attempt to mortgage a homestead, that neither said that it was such, and he told them if they had in mind creating a mortgage on a homestead he "want[ed] no part of it."

The stated consideration for the conveyance was $48,000.00. After deducting the delinquent principal and interest payment of $5,889.00, the balance of the mortgage of $33,600.00 to which the 77.80 acre property was subject, accrued interest and taxes, Attorney Dittert's fee, title fees, closing costs, and fees to the mortgagee's attorney, the Teals were left with $6,458.02. They directed the title company to remit this amount in three checks, one of which for $3,725.00 was endorsed to Magid's Company, Marshell Investment Company, another of which in the amount of $300.00 was endorsed to Mrs. Rinyu, and the balance of $2,433.02 Teal retained. The testimony was unclear why the appellees chose to turn over to Marshell Investment Company the check for $3,725.00. There was an indication that this amount was due in part, at least, to Magids on prior dealings. Attorney Bustamante testified that he received a fee of $1,000.00 out of this amount.

Subsequent to the filing of this law suit, Teal paid $2,000.00 to Mrs. Rinyu in what he testified were negotiations "to get the property back."

The trial was to the court which found that the transaction was a loan. The court held that the $1,500.00 premium was interest and, as such, was in excess of twice the rate allowable under the laws of the State of Texas. Tex.Rev.Civ.Stat.Ann. art. 5069–1.02 (Vernon 1971); Tex.Const. art. XVI, § 11. Accordingly the judgment applied statutory penalties, with the result that it provided that the deed be cancelled; the principal of the loan be forgiven; and appellees recover a money judgment of $5,000.00, being twice the $1,500.00 interest charge plus the $2,000.00 payment made subsequent to the filing of the law suit. See Tex.Rev.Civ.Stat.Ann. arts. 5069–1.-06(1), 5069–1.06(2) (Vernon 1971).

Appellant asserts the court's holdings were in error because of no evidence or insufficient evidence that a loan was agreed to or intended, because the evidence failed to show the relationship of debtor-creditor existed between the parties, and because the Teals' ratification of the sale estopped them from denying the validity of the transaction.

■ For a usurious contract to be established it is necessary that there be (a) a loan of money, (b) an absolute obligation that the principal be repaid, and (c) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Pansy Oil Co. v. Federal Oil Co.,* 91 S.W.2d 453, 455 (Tex.Civ.App.—Texarkana 1936, writ ref'd).

■ Whether a given transaction is classified as a sale or a loan depends upon the intention of the parties as "disclosed by the contract or the attending circumstances." *Wells v. Hilburn,* 129 Tex. 11, 98 S.W.2d 177, 180 (Tex.Comm'n App.1936, opinion adopted). In the instant case a close analysis of the attendant circumstances is revealing. The 77.80 acre tract was posted for foreclosure the day after this transaction was completed. Appellees had been delinquent in the annual installment for over three months and had not otherwise been able to raise the necessary funds. The press of time alone rendered whatever equity they possessed in the tract tenuous

and almost non-existent. The title to the 15 acre tract was cloudy and uninsurable, and hence that tract was not readily saleable. The court below found that the value of the land at the date of the deed was between $800.00 and $900.00 per acre. By applying the lower amount to the 11 acre tract and subtracting that amount ($8,800.00) from the $13,500.00 cash consideration paid by appellant, it becomes evident that from appellant's viewpoint she paid $4,700.00 for an almost non-existent equity in the 77.80 acre tract, and a cloudy title to a 15 acre tract. Using this analysis, classification of the transaction as a sale appears more than plausible. In addition, the fact that a competent attorney had warned Teal that he would not participate in the circumvention of the homestead laws and, nevertheless, was instructed to prepare the papers is indicative of the Teals' intent. We conclude that the circumstances attending the transaction demonstrate that there was no loan of money.

Appellees urge that the Teals paid $5,889.00 out of the proceeds of the sale to the holder of the mortgage on the 77.80 acres and could have allowed this property to have been foreclosed and still retain the 15 acre and the 11 acre tracts. While true, this statement does not tip the balance of the scales. Of the $5,889.00 payment, $2,800.00 was principal and the balance of $3,089.00 was interest. After making this payment, Teal had an opportunity to recoup the previous investment of principal and interest in the property by exercising the parol option to repurchase within six months. He may well have considered the potential gain from future market appreciation worth the risk. And, in any event, it has not been demonstrated that the total package was worth appreciably more than appellant paid for it.

■ Even assuming that the transaction did meet the test of a loan of money, it would still lack the essential element of an absolute obligation to repay the money. The Teals had only an option to repurchase within six months. Mrs. Rinyu could not force them to exercise the option under any

circumstances. On cross-examination Teal was asked if he could be sued to force repayment of principal. His answer was "Never thought about it under those terms." A party who claims that a transaction which is valid on its face is a device to mask the charging of usurious interest has the burden of proving that fact by "clear and convincing evidence." *A. B. Lewis Co. v. National Invest. Corp. of Houston*, 421 S.W.2d 723 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.). This testimony is far from "clear and convincing".

Appellees insist, however, that the price was so inadequate as economically to require the Teals to exercise their option to repurchase and thus preserve their interest in the property. *Kawauchi v. Tabata*, 413 P.2d 221 (Hawaii 1966). The economics of the transaction, set forth above, do not lead to such a conclusion. The property was worth little more than the price paid by Mrs. Rinyu.

It may well be that in a proper case Texas courts will interpret a sale with repurchase option as a mortgage because of the economic compulsion of the unrealistic price compared to real market value. See Poole, *Real Estate Sale—Leaseback Agreements Under Texas Usury Law: Circumvention or Sale?*, 7 St. Mary's L.J. 821, 333 (1976). This is not such a case.

The provisions of the judgment which void the deed and provide for a money judgment for twice the amount of the purported interest charge must be reversed and rendered. The question still remains, however, as to the disposition of the $2,000.00 paid by the Teals after the initiation of this law suit. The trial court held that this amount was a payment on the mortgage, and rendered judgment for appellees for this amount. Inasmuch as we have held that there was a sale and not a mortgage, it must follow that the payment was the down payment in belated negotiations to exercise the option. The Teals are therefore entitled to a refund of this payment as such negotiations have obviously terminated.

Inasmuch as we have determined that the transaction in question was a bona fide sale, we do not reach appellants' other points of error.

That part of the judgment which voids the deed from H. C. Teal et ux to Elnora Rinyu is reversed and judgment here rendered that said deed be confirmed. That part of the judgment which provides that appellees recover a money judgment of $5,000.00 from appellants is modified to $2,000.00 and, as so modified is affirmed.

Reversed and rendered in part and modified and affirmed in part.