Edwin A. WATTS, Appellant,

v.

Jerry D. HOLLEY, Appellee.

No. 13353.

Court of Civil Appeals of Texas, Austin.

July 22, 1981.

Rehearing Denied Sept. 4, 1981.

Travis R. Phillips, Phillips & Neal, for appellant.

Vance Dunnam, Dunnam, Dunnam, Horner & Meyer, Waco, for appellee.

POWERS, Justice.

This appeal is taken from an order of the 261st Judicial District Court of Travis County which sustained the plea of privilege of Jerry D. Holley, appellee.

Appellant Edwin A. Watts sued Holley in Travis County alleging an action for breach of contract and statutory actions for usury, arising out of an ostensible sale and lease-back of improved real property and equipment, which Watts claimed was a loan transaction. Holley filed his plea of privilege to be sued in McLennan County, the county of his residence. Watts' controverting affidavit asserted that special venue existed in Travis County by reason of his statutory actions for usury under Tex.Rev. Civ.Stat.Ann. art. 5069–1.06, which allows such actions to be brought in the county where a usurious transaction is "entered into" or where usury is received or collected. Tex.Rev.Civ.Stat.Ann. art. 1995, subsection 30. Following a hearing without a jury, the trial court sustained Holley's plea of privilege and ordered the case transferred to McLennan County. Although findings of fact and conclusions of law were requested, none were filed.

We will reverse the judgment of the trial court and remand the cause to that court.

Findings of fact and conclusions of law may properly be requested and filed in a venue case, but they are not required to be. Tex.R.Civ.P. 296, 385.

Where the record contains no findings of fact or conclusions of law as in the present case, we ordinarily affirm the order of the trial court if it may be upheld on any legal theory supported in the evidence. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962). It is, in such cases, presumed that the trial court resolved every fact issue in favor of the appellee. Where the appellant contends there is "no evidence" to support the judgment and the implied findings of fact incident thereto, we are required to review the evidence in a light most favorable to the trial court's judgment, disregarding all contrary evidence. *James v. Drye*, 320 S.W.2d 319 (Tex.1959). Where the appellant contends that the evidence is "insufficient" to support the judgment, a different rule applies, however, and in determining that

question we must consider and weigh all the evidence, including any evidence contrary to the trial court's judgment. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980). Watts, the appellant here, complains on appeal that the trial court erred in failing to find (1) that a usurious transaction was "entered into" in Travis County, and (2) that Holley received or collected usurious interest in that county. Coupled with appellant's argument in his brief, we interpret these points of error to be complaints of insufficient evidence. We will, therefore, examine appellant's points of error using a sufficiency of the evidence standard.

■ To maintain the special venue in Travis County, Watts was required to show by a preponderance of the evidence that he had a meritorious cause of action for usury under Article 5069–1.06, *supra*, and that the usurious transaction was "entered into" in Travis County or that Holley received or collected usury in that county. *See Fitting Supply Co. v. Bell County Solar Control Corp.*, 605 S.W.2d 856 (Tex.1980). To show a meritorious cause of action for usury, Watts was required to establish these elements: (1) a loan of money; (2) an absolute obligation to repay; (3) the exaction of a greater compensation than allowed by law; and (4) the lender's intention to exact usury. *Pansy Oil Co. v. Federal Oil Co.*, 91 S.W.2d 453 (Tex.Civ.App.—Texarkana 1936, writ ref'd).

■ Whether a particular transaction is a sale or a loan depends upon the intention of the parties as manifested by their agreement or the surrounding circumstances. *Wells v. Hilburn*, 98 S.W.2d 177 (Tex.Com. App.1936, opinion adopted). The instruments which would objectively reflect the parties' agreement in this case, while consistent with an outright sale of the property, and a lease-back to Watts, are alleged by Watts to be colorable only and contrary to the real agreement of the parties for a loan secured by the property and repayable

in the form of the rents required of Watts under his lease contracts with Holley. The parties disagree, of course, about their contractual intentions, the validity of the instruments, and the nature of the transaction. We are left, then, with drawing their true agreement from the totality of the circumstances. Such circumstances include: the preliminary negotiations; whether the seller urgently needed money before entering the transaction; whether the buyer was normally in the business of lending money; the reasonableness of the amount charged as rent in the lease of the property back to the seller; and the price paid for the property. See Comment, *Real Estate Sale-Leaseback Agreements Under Texas Usury Law: Circumvention or Sale?*, 7 St. Mary's L.J. 821 (1976). The ultimate and essential point to be determined is whether the parties intended a mortgage or an absolute conveyance of the property. *Perry v. Long*, 222 S.W.2d 460 (Tex.Civ.App.—Dallas 1949, writ ref'd).

The evidence introduced at the plea of privilege hearing consisted primarily of Watts' own testimony and documents offered by him, including the deed in issue. *Holley chose to offer no evidence and relied upon the issue of whether Watts' evidence was legally sufficient.* The evidence showed that in the spring of 1977, Watts and his partner[1] needed money to complete a remodeling of the second floor of their building to accommodate a physical fitness enterprise they intended to operate therein, and to purchase the physical fitness equipment that they had ordered but not received. They discussed their financial need with Holley in Travis County and he agreed to lend them $50,000.00 for the remodeling and $53,200.00, the purchase price of the equipment, at a rate of interest between twenty and thirty percent.[2] There was no evidence that the parties agreed at this time about the terms of repayment or the exact rate of interest. Watts obtained at

1. Watts testified without contradiction that while his nominal partner was Carroll D. Best, his real "partner in interest" was T. A. Danford for whom Ms. Best acted.

2. Watts' petition alleged Holley eventually loaned the partners a net amount equal to $92,-070.00, in installments advanced during the period April 1 through August 4, 1977.

this time, however, and gave to Holley, a mortgagee's information letter issued by Texas Title Guaranty Company through Austin Title Company. In substance, the company agreed to issue an insurance policy guaranteeing that the lien of a deed of trust, to be executed by the partners for the benefit of Holley in the amount of $50,-000.00, would be superior to any other lien on the building save for several listed encumbrances. The policy itself was never issued nor does it appear that any such deed of trust had been executed at this time.

Watts testified further that after the oral agreement was made for a loan, the partners traveled to Waco, in McLennan County, to meet with Holley's attorney and accountant. A curious episode then occurred in the office of Holley's attorney, who had prepared documents to evidence each of three possible transactions to evidence and effectuate the agreement made earlier. These documents consisted of:

(1) An earnest money contract reciting the partners' agreement to sell their building to Holley for a sale price equal to $373,852.00, payable entirely by Holley's assuming an existing indebtedness secured by a lien on the property, associated with a promissory note in the original amount of $378,000.00; and a deed of general warranty in regular form evidencing the partners' conveyance of the property to Holley for a recited consideration of ten dollars and Holley's agreement to assume such debt.

(2) A builder's or mechanic's lien contract and associated promissory note, setting forth Holley's agreement, as contractor, to construct improvements on the second floor of the building for $50,000.00; and a promissory note in that amount to be executed by the partners, secured by a lien on the building granted in the contract, and payable ninety days from its date (April 20, 1977).

(3) A promissory note and deed of trust reflecting a $50,000.00 loan from Holley to the partners at ten percent per annum, secured by the lien of the deed of trust and payable on or before ninety days from its date (April 20, 1977).

Watts testified that Holley's attorney told them that all three sets needed to be signed before an initial payment of $10,-000.00 would be "disbursed," that the attorney and accountant needed to keep Holley out of usury problems, and that they would determine or choose at a later time which set of documents they would use. The partners agreed to this arrangement, executed all the documents on April 20, 1977, and received $10,000.00 in the form of a bank check drawn by Holley on the account of Mid-State Home Improvement Co. in Waco, dated the same day and payable to the partners jointly. Copies of all the signed documents were introduced in evidence and bear the partners' and Holley's signatures where appropriate.

Watts continued by stating that Holley informed the partners in June of 1977 that he elected to use the first set of documents, that is, those consistent with a sale of the property to Holley. Watts stated further that Holley's accountant had given him (Watts) a statement of the partners' account. A copy of this statement was introduced in evidence without objection. The statement listed several credits to the partners' account. These credits resulted from rent checks collected by Watts from a tenant on the ground floor of the building and delivered to Holley. The statement shows that numerous advances in varying amounts were made from time to time prior to August, 1977. It includes numerous amounts for "lumber," "paneling and wall covering," subcontract payments, and similar construction items. It also lists four mortgage payments to the Robert C. Wilson Company for May, June, July and August in the amount of $4,052.00 each.[3] Watts

---

**3.** These mortgage payments are shown on the statement to have been paid to Robert C. Wilson Company, the holder of the superior lien on the building, securing a promissory note in the original amount of $378,000.00, dated November 12, 1975. Charging these payments against the partners' account, as indicated on the statement, and as claimed in Watts' testimony, is totally inconsistent with Holley's having assumed and promised to pay that debt to Wil-

testified that this statement accurately reflected payments or disbursements made by Holley for the remodeling. Such disbursements *after* the deed of April 20, 1977, are, of course, inconsistent with the consideration recited in the deed and are consistent with the loan agreement averred by Holley and described in his testimony. They are also consistent with a debtor-creditor relationship arising with the first advance of $10,000.00 on the date of the deed and continuing on through the summer of 1977, after the date of the conveyance that purports to be absolute and to be made in consideration of Holley's simple assumption of the debt in favor of the Robert C. Wilson Company. The partners' continued possession and improvement of the property are also consistent with such statement and with the theory that the deed was only intended as a mortgage to secure the sums advanced by Holley. There is no allegation or testimony that the partners were in possession as tenants after the deed was executed and preceding the making of the leases now to be discussed.

Continuing his testimony, Watts said that Holley came to Austin, in Travis County, and the partners and Holley executed a lease of the building's second floor and a lease of the equipment, Holley being in each case the lessor and the partners the lessees. Copies of these lease instruments were introduced in evidence without objection, and show a tenancy beginning on August 1, 1977. The building lease is dated August 5, 1977, and in addition to the normal provisions in such contracts, states that the term of the lease is two years beginning August 1, 1977; that the rent for the term is $74,888.00, payable $3,120.33 per month beginning August 1, 1977; and that the partners are given the option right to purchase the building merely by paying the balance due on the lease at the time of their election to purchase, and by assuming the

debt owed to Robert C. Wilson Company. The equipment lease is dated August 1, 1977, and among other things, states that the lease is for a two-year term commencing August 1, 1977; that the rent for the term is $2,749.70 per month, beginning August 1, 1977; and that the partners shall have the option right to purchase the equipment at the end of the term for $5,322.00. Watts testified that the partners executed the instruments in Austin just before August, 1977, and that the purpose of the leases was to provide the terms for their repayment of the loan. The leases obligate the partners to pay the "rents" set forth therein.

Concluding his testimony, Watts stated that in the latter part of August, 1977, his partner Danford sold the real property and equipment to a man named Cox, pursuant to a contract between Cox and Danford; that Danford and Watts discussed the sale to Cox before it was consummated; that Holley deeded the building to Danford contemporaneously with Danford's conveyance to Cox; and the title company which assisted in consummating the sale delivered $146,619.84 to Holley from the sale proceeds, in the form of the company's bank check. A copy of the check was introduced in evidence and shows that it was payable to Holley in that amount and negotiated by him. A copy of a real estate sale contract between "T. A. Danford, Trustee" and "Claude J. Cox" was introduced in evidence for the limited purpose of showing that "it states the terms under which a real estate sale was closed . . ." It is dated August 19, 1977, and calls for the sale and purchase of the building and equipment for approximately $200,000.00, payable in cash at closing, and assumption of the Robert C. Wilson Company debt.

■ The only evidence in the record that could support the trial court's judgment consists of the deed from the partners to

---

son, which the contract recites was the sole consideration for the conveyance to Holley. The statement, confirmed by Watts' testimony, supports the amounts of principal and compensation charged for use of the money as alleged by Watts. Watts' testimony is unimpeached,

clear, direct and positive that the statement was given to him by Holley's accountant as a statement of loan advances and credits, the mortgage payments to Robert C. Wilson Company being loan advances, of course, and not credits.

Holley, which Watts' pleading and testimony have attacked as being colorable only. The deed, absolute on its face, is presumed to be what it purports to be, that is, an absolute conveyance of the property. To overcome this presumption and to establish the deed as a mortgage, the evidence must be clear, unequivocal and convincing for otherwise the natural presumption will prevail. *Perry v. Long, supra,* at 465. But the deed absolute on its face is entitled to only a presumption that might be rebutted and will be given no different purpose than that designated by the parties themselves. *Austin v. Austin,* 182 S.W.2d 355 (Tex.Com. App.1944, opinion adopted). While the deed remains an evidentiary fact, the presumption that it is what it purports to be ceases on the introduction of contrary evidence. *Cf., Sudduth v. Commonwealth County Mutual Ins. Co.,* 454 S.W.2d 196 (Tex.1970). There exists an abundance of such evidence in this record.

Our review of the evidence shows that Watts' testimony and documentary evidence established the following without contradiction and in a manner that was clear, direct and positive.

■ The parties to the transaction intended that it be a loan and not a *bona fide* sale; that the negotiations preceding the parties' agreement for the loan took place in Travis County; that the loan agreement called for a loan of $103,200.00 at a rate of interest between 20% and 30%, with the exact charge for the use of the money and the terms of repayment to be determined subsequently; that the agreement was made in Travis County; that the partners were desperate for a loan of money to complete the project; that the three sets of documents, each evidencing on their face a different kind of transaction, were executed in McLennan County under an agreement

that Holley was free to select the set to use, as dictated by his desire to avoid usury problems and otherwise to serve his best interests; that the set chosen was not to embody or reflect the true agreement of the parties; that the execution of the "lease" instruments occurred in Travis County; that these instruments had the purpose of concluding the previously incomplete agreement by obligating the partners to repay the loan in the form of rent payments, according to the terms of the leases; that the leases had the additional purpose of furnishing the partners a means of reacquiring record title to the property, after repayment of the loan, through or by means of the option right to repurchase contained in each of the leases; that at least $92,070.00 [4] was actually advanced by Holley under his agreement to loan $103,200.00; that Holley collected and received $146,619.84 in Travis County in repayment of the principal, and in compensation for the use of his money for approximately three and one-half months; and that the sum of $146,619.84 was money belonging to Watts and his partners as proceeds from the sale of their property, which was delivered to Holley in their behalf by the title company for the purpose of repaying the loan to Holley and paying him compensation for the use of his money for the period of approximately three and one-half months.

Under the "lease" instruments, Watts and his partner were obligated to repay a total amount of $140,880.00 as "rent" which was, in truth, repayment of the principal and payment of compensation for the use of the money. *See Schramm v. Ullrich,* 90 S.W.2d 293 (Tex.Civ.App.—Beaumont 1935, writ ref'd). The maximum allowable charge for the use of the money actually advanced, or agreed to be loaned by Holley, for a period of three and one-half months at

4. Watts testified that Holley advanced $56,220.00 for the purchase price of the equipment, paying $26,110.00 on April 22, 1977, and the same amount on July 5, 1977. The statement given to Watts by Holley's accountant shows that $58,249.10 was advanced for mortgage payments and construction items. This sum, when added to the sum for the equipment, equals $114,469.10. Deducting the rent check "credits" also shown on the statement, a total of approximately $10,920.00, leaves a net amount advanced by Holley equal to $103,549.10 if we read correctly the photocopy of Plaintiff's (Watts') Exhibit 8, which is of poor quality in part.

the maximum allowable rate of interest (10% per annum), is less than $3,000.00, even had the entire principal amount been advanced in a lump sum. The amount ($146,619.84) actually collected and received by Holley, and the amount ($140,880.00) contracted to be paid by the partners, are thus shown to be in excess of that allowed by law.

After examining all the evidence in the record, we conclude that there is not sufficient evidence to uphold the trial court's judgment.

We hold that Watts established by a preponderance of the evidence a meritorious cause of action for usury under Article 5069–1.06, and that Holley received and collected usury in Travis County and entered into a usurious transaction in that county. We therefore reverse the judgment of the trial court and remand the cause to that court for a trial.

Reversed and Remanded.