**EL PASO REFINING, INC., Appellant,**

v.

**SCURLOCK PERMIAN CORPORATION,
Appellee.**

No. 08–99–00005–CV.

Court of Appeals of Texas,
El Paso.

April 18, 2002.

---

E. Link Beck, Beck & Given, P.C., El Paso, Timothy Patton, Timothy Patton, P.C., San Antonio, for Appellant.

Max Hendrick, James D. Thompson, Catherine Bukowski Smith, Vinson & Elkins, L.L.P., Houston, for Appellee.

BARAJAS, C.J., LARSEN, McCLURE, and CHEW, JJ., EN BANC.

## OPINION ON MOTION FOR REHEARING EN BANC

SUSAN LARSEN, Justice.

Appellant El Paso Refining Inc. has filed its motion for rehearing en banc, following its initial motion for rehearing which was overruled by this Court, en banc, on March 20, 2002. For the reasons set out below, we find that the second motion is a nullity, and we therefore dismiss it for lack of jurisdiction.

### Facts

The Court issued its opinion affirming the trial court's judgment on January 31, 2002. Appellant moved for rehearing on March 4, 2002. The Court overruled the motion for rehearing on March 20, 2002, without opinion and without making any changes in the original panel opinion. The motion was heard by the Court en banc.

Appellant then filed this motion for rehearing en banc on April 4, 2002.

**1.** Our jurisdiction extends for 30 days after we overrule the last timely filed motion for

### Second motion for rehearing a nullity

■ The rules of appellate procedure provide that, after an earlier motion for rehearing is decided, a further motion for rehearing may be filed within 15 days if the court modifies its judgment, vacates its judgment and renders a new one, or issues an opinion in overruling a motion for rehearing. TEX.R.APP. P. 49.5. None of these conditions occurred when appellant's initial motion for rehearing was ruled upon, and its second motion for rehearing is therefore a nullity. *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 702 (Tex.1990) ("A second motion for rehearing not authorized by the rules is a nullity even if the court of appeals rules on it.").

■ Further, although appellant styles its motion one for rehearing en banc, this does not change our conclusion that it has no legal effect. TEX.R.APP. P. 49.7 allows the court to order en banc reconsideration of a panel decision during the court's plenary jurisdiction,[1] but that rule contains no provision enlarging the parties' ability to file additional motions for rehearing. Finally, we note that the initial motion *was* heard en banc. Appellant's motion asks for nothing more than it has already received.

### Conclusion

For these reasons, we dismiss El Paso Refining Inc.'s motion for rehearing en banc for lack of jurisdiction.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

### OPINION

SUSAN LARSEN, Justice.

This Court's opinion of January 31, 2002 is withdrawn and the following is substituted.

rehearing. TEX.R.APP. P. 19.1(b).

This is an appeal from a take-nothing judgment rendered against appellant/plaintiff El Paso Refining, Inc. ("EPRI") in a usury suit. EPRI raises seven points of error and contends that the trial court erred by: (1) charging the jury to apply a clear and convincing, instead of by a preponderance of the evidence, burden of proof, (2) submitting the issue of EPRI's obligor status to the jury as an instruction, (3) submitting the issue of defendant Scurlock Permian Corporation's (SP's) time-price differential defense to the jury as an instruction, (4) submitting SP's waiver defense to the jury as an instruction, (5) submitting SP's usury savings clause defense to the jury as an instruction, (6) allowing expert testimony on EPRI's standing to sue for usury and, (7) failing to order a new trial because the jury's failure to find usury was against the great weight and preponderance of the evidence.

For those reasons detailed below, we affirm the judgment of the trial court.

## I. PROCEDURAL AND FACTUAL SUMMARY

In May 1986, Michael Shelton ("Shelton") formed a partnership with David Jones to acquire the Texaco Refinery ("the Refinery") in El Paso, Texas. After acquiring the Refinery, the partnership transferred it to a newly-created corporate entity, EPRI. The sole source of crude oil to the Refinery at all times relevant to this appeal was SP or its predecessors in interest.

In 1989, the 1986 partnership was absorbed into a master limited partnership, El Paso Refinery, L.P. ("LP"), to raise funds to expand the Refinery's capacity and to bring it into compliance with environmental standards. In exchange for cash and units of participation, EPRI con-tributed the Refinery to LP. EPRI also became LP's general partner. As EPRI's executive vice-president, Shelton was in charge of crude supply, marketing, refinery operations, and financing.

In November 1989, an amended oil sales contract ("the 1989 Contract") was executed between SP as "Seller" and LP as "Buyer." EPRI signed the contract as the guarantor of any debt LP would incur pursuant to its past, present, or future agreements with SP.

Under the 1989 Contract, LP would receive a daily supply of 26,000 barrels of SP crude. The price per barrel would be determined by the sum of a posting price, a gathering and handling allowance per barrel, and transportation costs. Payment in full for a monthly supply was due by wire transfer to SP on or before the 20th day of the month following the month of delivery. The 1989 Contract explicitly warns the signatories in full caps that "Time is of the essence in this contract."

The 1989 Contract contained extensive and unambiguous payment and default provisions. If the amount due and owing to SP exceeded the Current Collateral Value at any time, SP would notify LP. Within 24 hours, LP would be required to pay an amount sufficient to reduce the unpaid amount down at least to the Current Collateral Value.[1] SP also retained the right to terminate the contract unilaterally, withhold shipments without notice, and/or demand immediate payment of all amounts due if reasonable grounds for insecurity arose with respect to LP's performance of the contract. Interest on past due amounts would be payable at "the Highest Lawful Rate."

---

1. Current Collateral Value was determined by the sum of LP's current accounts receivable, inventory, and cash pledged to secure its obligations under the 1989 Contract.

On the same day that the 1989 Contract was executed, EPRI executed a Continuing Guaranty agreement ("the Guaranty"). The 1989 Contract specifically incorporated the Guaranty by reference, and required that LP's performance was guaranteed pursuant to its terms. Under the Guaranty, EPRI "absolutely and unconditionally guarantee[d] to [SP] the full, prompt, and punctual payment at maturity" of all LP's then existing or thereafter arising obligations to SP. The 1989 Guaranty section entitled "Primary Liability of Guarantor" contains a single reference to EPRI as "a primary obligor."

By signing the Guaranty, EPRI agreed to waive any rights to notice it may have otherwise had if SP sought to collect any of LP's debts from EPRI. EPRI further agreed to waive any defenses, including usury, that LP could have asserted against SP. The Guaranty also ensured that SP did not have to seek payment or performance from any other entity, including LP, before it demanded payment from EPRI. The Guaranty also contained a usury savings clause that prevented interest in excess of the maximum amount permitted by law from being collected from, reserved from, or charged to EPRI.

By July 1991, the refinery expansion project was almost complete, although LP's available cash was nearly depleted due to cost overruns. A $25 million credit line for LP was arranged with Bank Brussels Lambert. EPRI also loaned LP another $7.5 million.

In July 1991, Scurlock Permian Corporation, the instant appellee, acquired Permian Operating Limited Partnership. In July 1991, the Refinery also completely shut down for a brief period to re-integrate its equipment and operations. It reopened on August 3, 1991.

Although the Refinery was closed, LP still owed SP for crude delivered in June.

Because LP was short on cash, Shelton called SP and told them that payment would be late by a few days. SP responded by letter stating that it would declare a default if payment was not received by July 25 for the balance of LP's 17–odd million dollar debt to SP.

A meeting and other discussions between the two entities immediately followed receipt of this letter. SP's representative told Shelton it would no longer accept late payments and that it would declare a default or terminate the crude supply if payment was not timely received. Shelton, already upset by what he believed to be "outrageous" pricing by SP, asked for an explanation of how SP set prices. SP's representative told Shelton it felt it faced "extreme financial risk" by continuing to sell LP crude. He also told Shelton that SP would now charge a risk premium of 15 to 20 cents per barrel as part of the gathering and handling fee because of that risk. EPRI has consistently maintained that the risk premium constitutes usurious interest.

Similar discussions were held in the successive months. From August 1991 onward, SP sent EPRI pricing amendment letters advising of price changes and volumes. Invoices for deliveries were also sent. Payments based on the delivery invoices were made by wire transfer from LP to SP. Although LP did accept delivery of SP's crude, neither LP nor EPRI ever countersigned any of the price amendment letters, and LP continued to negotiate with SP over the risk premium in the gathering and handling fee component of the per barrel price billed to LP. There is no dispute that EPRI never paid for any of the crude received by LP.

LP continued to be plagued with financial difficulties. In August 1991, it was unable to pay SP. On August 23, 1991, SP

declared a default and sent LP written notice of that default. In October 1991, LP was short on its payments and SP again notified LP of a default by letter.

On November 8, 1991, LP's creditors met in New York to discuss its worsening financial situation. SP attended the meeting. No solution regarding LP's liquidity problem was reached at that meeting. Immediately following the meeting, however, SP's representative told Shelton that LP had to provide SP with a $5 million guaranty before midnight November 12, 1991 or it would suspend shipment of all crude to the Refinery. Shelton solved this crisis by obtaining an additional $5 million letter of credit for LP from Bank Brussels Lambert by the deadline.

By December 1991, LP owed SP $37,400,000 just for November's delivery of crude. Another $85 million was owed to other term lenders. The two groups of creditors fought over LP's rapidly dwindling cash supply. LP gave priority to SP because the Refinery could not generate any revenue without a continuing supply of crude oil.

The Refinery continued operations throughout 1992, but LP's severe financial difficulties forced it to file for bankruptcy in October of that year. In 1993, LP filed a suit against several entities including SP. The suit against SP included a usury cause of action identical to that alleged by EPRI in the instant suit. LP's lawsuit was settled via a complete and full release of liability for SP and dismissal of the suit with prejudice. Ultimately, EPRI filed for bankruptcy approximately one year after LP's bankruptcy was filed.

## II. THE POINTS OF ERROR

### 1. The Proper Burden Of Proof.

EPRI's usury claim was submitted to the jury in a single broad-form question:

"Did SCURLOCK PERMIAN CORPORATION charge EL PASO REFINING, INC. interest in the price of crude oil in excess of the amount allowed by law?" The burden of proof instruction given in conjunction with this liability question was as follows: "A 'Yes' answer to Question No. 1 must be based on clear and convincing evidence. The term 'clear and convincing evidence' means the measure of degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established."

EPRI contends the appropriate burden of proof in a usury case is by a preponderance of the evidence. In its first issue, it thus asserts that the trial court committed reversible error by permitting the inclusion of the "clear and convincing" burden of proof instruction in the charge.

### A. Standard of Review.

■ Refusal to submit a requested definition or instruction will not be overturned unless an abuse of discretion is found. *Pearce v. Pearce*, 824 S.W.2d 195, 199 (Tex.App.—El Paso 1991, writ denied). The standard of review for a trial court's failure to instruct is that the error must have caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. *Id.* (citing TEX.R.APP. P. 81(b)(1) (new rule 44.1(a)(1))); *Bryan v. Dockery*, 788 S.W.2d 447, 451 (Tex.App.—Houston [1st Dist.] 1990, no writ).

### B. The Law.

■ EPRI presents a somewhat unsettled question of law in Texas, and an issue which has not been addressed by this Court in eighty years. Two courts of appeals apparently observe an old line of cases which hold that the party "who claims that a transaction which is valid on its face is a device to mask the charging of usurious interest has the burden of proving that fact by 'clear and convincing evi-

dence'." *See Great Southern Life Ins. Co. v. Williams*, 105 S.W.2d 277 (Tex.Civ.App.—Amarillo 1937, no writ); *Rinyu v. Teal*, 593 S.W.2d 759, 762 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.) (quoting *A.B. Lewis v. National Invest. Corp. of Houston*, 421 S.W.2d 723 (Tex. Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.)). Nevertheless, we hold the better view is to apply the preponderance of the evidence standard to usury cases for the following reasons.

■ First, although usury is a civil cause of action, the usury statute is considered penal in nature and is therefore strictly construed. *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 476 (Tex.1988); *Houston Sash and Door Company v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979). The usury statute itself however is silent with regard to the burden of proof to be applied to usury cases. *See* TEX. FIN. CODE ANN. §§ 305.001–305.005, 305.101–305.104 (Vernon 1998). That silence mitigates in favor of applying the same burden of proof as any other civil action. *See In re J.A.K.*, 624 S.W.2d 355, 357 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). Indeed, the clear and convincing standard is mandated only in circumstances where clear statutory language permits its application. *See Steves*, 751 S.W.2d at 477; *In re J.A.K.*, 624 S.W.2d at 357.

Second, those decisions that authorize the clear and convincing evidence standard rest on shaky legal ground. The application of the clear and convincing evidence standard in a usury case first appears in Texas jurisprudence in the 1937 Amarillo decision *Great Southern Life Ins. Co. v. Williams*. *Great Southern Life Ins. Co. v. Williams*, 105 S.W.2d 277, 280 (Tex.Civ.App.—Amarillo 1937, no writ). The *Great Southern* court supported its holding that the "clear and convincing" standard applied with citation to a 1934 dissent and three earlier Texas cases. *Id.* (citing *Ferguson v. Martin*, 70 S.W.2d 804, 807 (Tex. Civ.App.—Dallas 1934, writ dism'd) (Bond, J. dissenting); *Schoolcraft v. Temple Trust Company*, 64 S.W.2d 1052 (Tex.Civ.App.—Amarillo 1933, no writ); *Marsh v. Tiller*, 293 S.W. 223 (Tex.Civ.App.—Texarkana 1927, no writ); *Rushing v. Citizens' National Bank of Plainview*, 162 S.W. 460 (Tex.Civ.App.—Amarillo 1913, writ ref'd)).

Justice Bond's *Ferguson* dissent aside, none of the cases cited by the *Great Southern* court stand for the proposition that clear and convincing evidence is the appropriate burden of proof. In fact, the *Rushing* court specifically approved the use of the preponderance of the evidence standard in usury cases and was writ refused, while the other two opinions are completely silent on the issue. *Schoolcraft*, 64 S.W.2d at 1053; *Marsh*, 293 S.W. at 224; *Rushing*, 162 S.W. at 467.

*Great Southern's* effect did not end there. For twenty-four years the case properly lay dormant until it was half-heartedly resuscitated by the Amarillo court. *See Griffin v. Stewart*, 348 S.W.2d 800, 803 (Tex.Civ.App.—Amarillo 1961, writ dism'd by agr.). Ironically, although the *Griffin* court did cite *Great Southern* as standing for the proposition that clear and convincing evidence was required to sustain a "subterfuge" usury case, the court's actual holding was that proof of usury "would require at least a preponderance of the evidence, which is clearly not present in this case." *Id.*

Unfortunately the *Griffin* court's mention of *Great Southern* revived that which should have died. In succeeding years, the Houston Fourteenth and Dallas Courts absorbed *Great Southern/Griffin* into their jurisprudence. *See Home Sav. Ass'n of Dallas County v. Crow*, 514 S.W.2d 160, 166 (Tex.Civ.App.—Dallas 1974), *affirmed by Crow v. Home Sav. Ass'n of Dallas*

*County,* 522 S.W.2d 457, 458 (Tex.1975) (affirming court of appeals decision that evidence demonstrated the transaction in question was a bona fide loan by defendant bank, burden of proof was not discussed although jury liability question incorporating preponderance of the evidence was apparently approved); *Rinyu,* 593 S.W.2d at 762 (relying on *Lewis* opinion from Houston court).

With regard to the rest of Texas jurisprudence, however, *Great Southern* is nothing more than an anomaly, and certainly not the law in this district. *See Crow,* 522 S.W.2d at 458 n. 1; *Watts v. Holley,* 622 S.W.2d 583, 585 (Tex.Civ. App.—Austin 1981), *rev'd on other grounds, Holley v. Watts,* 629 S.W.2d 694, 697 n. 3 (Tex.1982) (fact finding by preponderance of evidence burden only applies in trial, not appellate, court); *Campbell v. Oskey,* 239 S.W. 332, 334 (Tex.Civ.App.— El Paso 1922, no writ) (usury must be proven by "a preponderance of credible evidence").

■ Other reasons mitigate in favor of maintaining the preponderance standard in usury cases. We agree with EPRI—such cases raise no issue of constitutional magnitude, nor do they involve anything other than money or seek the vindication of important individual interests. *See Addington v. Texas,* 441 U.S. 418, 423–25, 99 S.Ct. 1804, 1808–09, 60 L.Ed.2d 323 (1979). Under Texas law then we find no reason to disturb the general rule in civil cases that the burden of proof is by a preponderance of the evidence. *Ellis County State Bank*

*v. Keever,* 888 S.W.2d 790, 792 (Tex.1994); *In re Estate of Torrance,* 991 S.W.2d 98, 100–01 n. 5 (Tex.App.—El Paso 1999, no pet.).

Were this the only issue in this case, we would reverse and remand for a new trial. *See In re J.A.K.,* 624 S.W.2d at 357 (without statutory authorization, application of clear and convincing evidence to require mother to disprove paternity constitutes reversible error); *State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977) (error to instruct the jury that an issue requires a standard of proof greater than that of the preponderance of the evidence). However, for those reasons detailed below that relate to EPRI's second point of error, the ultimate disposition of this appeal requires us to affirm the take-nothing judgment entered by the trial court and we find this error to be harmless. Tex.R.App. P. 44.1. Issue One is therefore overruled.

## 2. The Standing Issues.

### A. Issue of Law or Issue of Fact.

■ In its second issue, EPRI claims the trial court erred in submitting EPRI's status as obligor to the jury. Under Texas usury law, standing is determined by whether plaintiff is an "obligor" within the meaning of Section 305.001 of the Finance Code.[2] EPRI here asserts that the trial court erred in submitting an instruction to the jury concerning its status as an "obligor" because standing is a question of law to be determined by the court.[3] We must

---

2. In 1997, the entire usury statute was recodified. *See* Tex.Rev.Civ. Stat. Ann. art. 5069–1.06 (Vernon 1997) *recodified in* Tex. Fin.Code Ann. §§ 305.001–305.005 and 305.101–305.104 (Vernon 1998). Although the parties each refer to the old statute in their briefing, we conclude that the "newly" codified statute applies and will therefore be cited throughout this opinion.

3. The instruction read: "You may not find that Scurlock Permian Corporation charged El Paso Refining, Inc. interest in the price of crude oil if you find that El Paso Refining, Inc. is not an obligor. A party is not an obligor if it is liable on a debt only as a guarantor. An 'obligor' is one who is an immediate party to the transaction."

therefore determine whether standing is a question of law or a factual issue to be resolved by a jury.

At first blush we note that EPRI may well have waived this point on appeal. At trial, EPRI made the following objection to the submission of the obligor instruction: "The Plaintiff objects to the Court's instructions that you may not find that Scurlock Permian Corporation charged El Paso Refining, Inc. interest in the price of crude oil. [sic] If you find that El Paso Refining, Inc. is not the obligor because the evidence establishes El Paso Refining, Inc. [sic] status as an obligor as a matter of law." Restated, the objection was a request to the trial court to strike the instruction because the evidence established EPRI's standing as a matter of law thus eliminating the need for a jury factual determination.

■ A "party is confined to the jury instruction objection made at trial; any variant complaint on appeal is waived." *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 135 (Tex.App.—El Paso 1992, writ denied); *see State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235, 240–41 (Tex.1992) (trial court must be made aware of the complaint "timely and plainly"). On its face, EPRI's objection does not clearly inform the trial court that the instruction should have been struck because EPRI's standing was a legal question for the court, not the jury, to resolve. Where "complaint at trial does not comport with the complaint . . . on appeal . . . . error, if any, [is] waived. . . ." *Russell v. Campbell*, 725 S.W.2d 739, 749 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Conner v. Bean*, 630 S.W.2d 697, 701 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (cannot enlarge objections on appeal).

■ Assuming *arguendo* that EPRI did not waive the standing issue because of its objection to the charge, we review the merits of this issue *de novo* because it presents an issue of law. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999).

■ Standing is a necessary component of subject matter jurisdiction. *Waco I.S.D. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000). Whether a party has standing to maintain suit is a question of law for the court to resolve. *Cleaver v. George Staton Co., Inc.*, 908 S.W.2d 468, 472 (Tex.App.— Tyler 1995, writ denied); *see Stewart v. Stine*, 57 S.W.3d 94, 99 (Tex.App.—Fort Worth 2001, no pet. h.); *Texas Dept. of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 281 (Tex.App.—Austin 2000, writ denied). In this case, the trial court's obligor instruction allowed the jury to consider a question of law. We therefore find that the trial court did err by permitting the charge to go to the jury with the "obligor" instruction.

■ The resolution of this issue does not end here, however. EPRI must still demonstrate that such charge error was harmful. *See* Tex.R.App. P. 44.1(a)(1); *Timberwalk Apts., Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998). In this regard, we review the entire record to determine whether any evidence supports EPRI's position that it has standing to sue SP. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). For those reasons detailed below, we find that the submission of the obligor instruction was harmless.

**B. Was EPRI An "Obligor" Within the Meaning Of The Usury Statute?**

■ The Texas usury statute provides that any person who contracts for, charges, or receives interest greater than the amount allowed by law, "is liable to the

obligor for an amount" calculated pursuant to a statutory formula. TEX. FIN.CODE ANN. § 305.001(a) (Vernon 1998). As an affirmative defense to EPRI's usury cause of action, SP asserted that EPRI was not an "obligor" within the meaning of the statutory scheme. The trial court denied SP's request for a directed verdict on this standing issue.

The parties agree that the Continuing Guaranty agreement ("the Guaranty") signed by EPRI on November 1, 1989 to ensure the payment of LP's debt to SP is a controlling document with regard to EPRI's status. EPRI argues that the phrase "a primary obligor" as stated in paragraph 5 of the Guaranty establishes EPRI's standing as an "obligor" within the meaning of the usury statute by a preponderance of the evidence. For its part, SP contends the Guaranty and other evidence established as a matter of law that EPRI was only a guarantor. In its view, the trial court therefore erred in refusing to grant its request for a directed verdict on the standing issue. For the reasons detailed below, we hold that EPRI was not an obligor under the usury statute.

■ As a matter of Texas law, the guarantor does not escape its obligation to pay by asserting a usury cause of action. *Ginsberg 1985 Real Estate Partnership v. Cadle Company*, 39 F.3d 528, 534 (5th Cir.1994) (construing Texas law); *see Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex.1979). That legal principle is reflected in the Guaranty itself as EPRI waived its rights to assert any defense that LP might have had in a suit against SP, including the right to assert usury as a defense. Stated another way, the Guaranty contemplates that only LP was the "obligor" within the meaning of the usury statute because only LP retained the right to assert a usury defense against SP.

■ That Texas usury law protects only the obligor from usury instead of the guarantor is internally logical. The only role for the guarantor is to ensure the debt is paid in the event the lender is not satisfied with the borrower's payment performance. In contrast, only the obligor receives the benefit of the principal obligation, in this case a continuing supply of SP's crude necessary to keep LP's operations afloat. The benefit of the original transactions in this case unambiguously and personally flowed to LP, not EPRI. This conclusion comports with Texas law which holds that "[u]sury is a personal defense and may not be asserted by a guarantor unless the contract with the guarantor also contains the usurious provision." *Ginsberg 1985*, 39 F.3d at 534 (quoting *FSLIC v. Griffin*, 935 F.2d 691, 700 (5th Cir.1991) (construing Texas law)). The Guaranty intrinsically recognizes this rule of law because it contains a usury savings clause. In this regard, it is important to note that EPRI has never alleged that the Guaranty was tainted by usury.

■ Texas law also holds that a "guaranty contract is collateral and secondary to the principal contract that is guaranteed in the secondary contract." *Joseph Thomas, Inc. v. Graham*, 842 S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ) (citing *Olson v. Smith*, 72 S.W.2d 650, 652 (Tex.Civ.App.— El Paso 1934, writ dism'd)). The Guaranty explicitly states that EPRI guaranteed "all obligation[s], liabilities, and sums ... due and/or owing or to become due and/or owing by El Paso [LP] to Permian," that is, that the Guaranty was secondary to any other agreement which LP may have had with Permian. As a matter of law, the Guaranty thus precludes EPRI from asserting usury because it was not an "immediate part[y] to the transaction[s] [that] creat[ed] the usury defense." *Peoples State Bank of Clyde v. Andrews*, 881

S.W.2d 520, 522 (Tex.App.—Eastland 1994, no writ); *Patterson v. Neel,* 610 S.W.2d 154, 156 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("[o]ne who is not by law a maker of a note is not an obligor thereon though as an absolute guarantor he is liable for payment under the guaranty contract").

As a factual matter, we note that every agreement introduced by EPRI at trial delineates the parties to those contracts as follows: LP as "the Original Buyer," "the Debtor," "the Original Debtor," "the Original Mortgagor," or "the Buyer" and SP as "the Seller," "the Secured Party," or "the Mortgagee." Those documents which refer to EPRI at all do so only to define it as "the Guarantor" or "the General Partner" of LP. Several of the agreements between LP and SP also purport to memorialize the assignment or unconditional assumption of all of EPRI's covenants, grants, and obligations by LP.

It is undisputed that EPRI never paid SP any money. Indeed, after declaring bankruptcy in 1992, LP sued SP directly for usury and other causes of action arising from the same transactions that EPRI now relies upon to sustain the instant suit. That case was ultimately settled, dismissed with prejudice, and LP's usury claim released. EPRI was never a party to that suit, nor did it seek to intervene in that action. One reasonable inference to be drawn from these facts is that EPRI did not have standing to enter that action because it was only a guarantor, not an obligor, and could therefore not recover damages for usury.[4]

▮▮▮▮ EPRI argues that proof of their obligor status exists in the form of invoices for crude oil sales and third-party

transportation costs incurred by LP, and pricing amendment letters sent from SP and addressed to EPRI. Even assuming these documents constituted demands that would implicate the usury statute, merely sending a demand letter does not transform a party into an "obligor." *Andrews,* 881 S.W.2d at 522. The Guaranty, in contrast, specifically made EPRI an absolute and unconditional guarantor of LP's debts to SP. As an "absolute guarantor," EPRI cannot assert usury against the creditor (SP) of the debtor (LP) whose debt it agreed to guarantee. *See Ginsberg 1985,* 39 F.3d at 534; *Houston Sash and Door Co. v. Heaner,* 577 S.W.2d 217, 222 (Tex. 1979).

The Guaranty contains a single reference to EPRI as "a primary obligor." Rather than establishing EPRI's status as an obligor under the usury laws, however, we find that the phrase "a primary obligor" merely references EPRI's status as an absolute guarantor because SP could pursue EPRI even before it sought recovery from LP. The Texas Supreme Court has examined this very issue in similar circumstances, and quotes New York case law with approval:

The term 'primary obligors' contained in the guaranty agreements must be read in light of those instruments and the other documents in this case. The provisions of which these two words are part were intended to continue defendants' personal liability as guarantors of payment, notwithstanding the possible subsequent extension, modification, substitution or other adjustment of the corporate debt without the consent of the guarantors.... The use of the words 'primary obligors' in the foregoing con-

4. SP has argued that LP's 1993 release destroyed any claim EPRI may have had for usury because EPRI's usury claim could only have been derivative of LP's. On this basis, SP asserted a *res judicata* defense at trial and has brought that defense forward in this appeal. We need not reach that issue to resolve this appeal.

text did not render the defendants co-makers or co-obligors liable jointly with Apex for its indebtedness under its bonds. They were and remain merely guarantors of the corporation's debt to the plaintiff[.]

*Universal Metals and Machinery v. Bohart,* 539 S.W.2d 874, 878 (Tex.1976) (quoting *Simon v. Landau,* 27 Misc.2d 269, 208 N.Y.S.2d 120, 123–24 (Sup.Ct.1960)); *see also Stanley v. Conner Const. Co.,* 651 S.W.2d 34, 37 (Tex.App.—El Paso 1983, no writ) ("This prohibition against the assertion of the claim of usury by the guarantor applies even though the guarantor is an individual who as against the holder of the note is primarily liable.").

■ Thus, we conclude that EPRI was not an obligor under the usury laws, and as such lacked standing to sue LP. Although the trial court erred in submitting the standing issue to the jury, such error was not harmful. In this case, the jury found that SP was not liable to EPRI. As a matter of law, we conclude that EPRI was not an obligor within the meaning of the usury statute and therefore lacked standing to maintain its suit against SP. Any error committed by the trial court in submitting the obligor instruction to the jury was therefore harmless because the trial court's judgment worked the proper legal result. *See Timberwalk,* 972 S.W.2d at 756 (charge error harmless if question of law negates entire cause of action).

### C. *Casteel* And Waiver Issue.

Although resolution of the standing issue is outcome determinative of this case, we nevertheless address several other points raised by EPRI. Specifically, in Issues Four, Five, and Six, EPRI contends that the trial court's inclusion of instructions on SP's affirmative defenses of time-price differential, waiver, and usury savings clause within the broad form liability question constitutes harmful error such that we are required to reverse and remand this appeal pursuant to the Supreme Court's opinion in *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex.2000). We disagree for two reasons.

■ First, *Casteel* does not apply until or unless the party seeking reversal and remand for charge error makes a "timely and specific" objection to the inclusion of the contested question. *Casteel,* 22 S.W.3d at 389–90. We find that EPRI failed to make specific objections at trial to support those issues it now raises on appeal concerning the time-price differential, waiver, and usury savings clause instructions. It has therefore waived its right to raise those points in this appeal. *Id.; Payne,* 838 S.W.2d at 240.

With specific regard to the usury savings clause instruction, we find that EPRI's objection at trial did not inform the trial court that this issue was a question of law for the court to resolve. EPRI is therefore precluded from raising this error on appeal. *Payne,* 838 S.W.2d at 240; *Oechsner,* 840 S.W.2d at 135.

■ With regard to the time-price differential, waiver, and usury savings clause instructions, EPRI's only trial objections were that the evidence was insufficient to permit their submission to the jury, not that the issues were legally barred from the case. Under *Casteel,* remand is only required when a theory should never have been presented to the jury because there was no valid *legal,* as opposed to *factual,* basis for such submission. *See Casteel,* 22 S.W.3d at 388 (defendant should be held "liable on proper, legal grounds"). EPRI's objections thus fail to implicate *Casteel* because objection to the evidentiary basis for the submission of an instruction presupposes that the issue is properly placed before a jury.

■ Waiver issues aside, our second and most compelling basis for rejecting the application of *Casteel's* mandate to remand stems from its assertion that remand is only appropriate "when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory." *Casteel,* 22 S.W.3d at 388. A comparison of *Casteel's* facts and the facts in this case demonstrates why we have no problem in discerning that this jury's verdict did not create harmful error.

In *Casteel,* thirteen independent grounds for recovery under TEX. INS.CODE ANN. art. 21.21 were submitted to the jury in a single broad form liability question. *Id.* at 387. The *Casteel* court examined those grounds and held that several of plaintiff's Article 21.21 causes of action should have been stricken as a matter of law because he lacked standing to bring such claims as a "consumer" within the meaning of the DTPA. *Id.* at 387–88. At the same time, the *Casteel* court found that plaintiff did have "consumer" status, and therefore standing, to pursue several other Article 21.21 violations. *Id.* The jury charge thus mixed Article 21.21 theories which plaintiff was precluded from bringing as a matter of law for lack of standing with Article 21.21 theories for which he did have legal standing. *Id.* at 388. The Supreme Court held there was no way that the appellate court could determine whether the jury rendered its verdict pursuant to theories for which plaintiff had standing or the theories for which plaintiff lacked standing.

In this case there is no such conflict. EPRI was not an obligor. It therefore never had standing to pursue a usury cause of action. As a matter of law, therefore, the entire case should never have been submitted to the jury. *See Z.A.O. f/k/a Bell Thunderbird Oil Co., Inc. v. Yarbrough Drive Center Joint Venture,* 50 S.W.3d 531, 549 (Tex.App.—El Paso 2001, no pet.) (remand only appropriate when appellate court cannot determine theory upon which jury verdict was based). In these circumstances we have no problem in determining that the jury's verdict and the trial court's judgment should be affirmed because judgment for EPRI was a legal impossibility. *See Casteel,* 22 S.W.3d at 388 (error harmless only when judicial determination that fact finder actually found defendant liable on proper, legal grounds).

In completing this discussion we also make the following observations. We have assumed, without deciding, that a jury instruction on an affirmative defense falls within *Casteel's* ambit. The question in *Casteel* was whether the submission of multiple liability theories, not affirmative defense instructions, in a single broad form question for the jury constituted charge error. In this case, however, only one theory of liability was ever pleaded and presented to the jury—usury. In fact, the broad form question was submitted to the jury in substantially the same form as that requested by EPRI.

■ In this regard, we further observe that many affirmative defenses are presented as instructions accompanying liability questions precisely because Texas trial practice rejects the use of inferential rebuttal special issues. *See* TEX.R. CIV. P. 277; *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 477 (Tex.1978); *Weitzul Const., Inc. v. Outdoor Environs,* 849 S.W.2d 359, 365 (Tex.App.—Dallas 1993, writ denied); *McDonald v. Brennan,* 704 S.W.2d 136, 138 (Tex.App.—El Paso 1986, writ ref'd n.r.e.). Inferential rebuttal issues are therefore only properly submitted to the jury in instruction form. *Id.*

■ We also cannot lose sight of the fact that Texas practice endows the trial court with considerable discretion in submitting explanatory instructions and

definitions to enable the jury to render a verdict. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *Macias v. Moreno,* 30 S.W.3d 25, 27 (Tex.App.—El Paso 2000, pet. denied). An instruction is proper only if it: (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *See Macias,* 30 S.W.3d at 27. An inferential rebuttal is a defensive theory that seeks to disprove a claim or theory relied upon for recovery by proving a contrary or inconsistent position. *Select Ins. Co.,* 561 S.W.2d at 476–77; *Weitzul Const., Inc.,* 849 S.W.2d at 365; *McDonald,* 704 S.W.2d at 138.

To extend *Casteel's* holding to defensive instructions such as those in this case is therefore troublesome. It could indeed limit the trial court's discretion and force it to present inferential rebuttal issues as separate questions to prevent reversible error. We do not think the *Casteel* court intended such a result especially because it reaffirmed the presumption that broad form submission is favored in Texas charge practice. *Casteel,* 22 S.W.3d at 390; *Excel Corporation v. Apodaca,* 51 S.W.3d 686, 700 (Tex.App.—Amarillo 2001, pet. granted); *Texas Dept. of Human Services v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990). Neither do we believe that the intent of that court was to return Texas practice to special and inferential rebuttal issues. Issues Two, Four, Five, and Six are overruled. Because we have found as a matter of law EPRI had no standing, we need not reach appellant's remaining issues.

## III. CONCLUSION

We affirm the judgment of the trial court.