## In re ESTATE OF E. Marie TORRANCE, Deceased.

### No. 08–98–00013–CV.

Court of Appeals of Texas, El Paso.

Feb. 4, 1999.

Linda Ibach Shaunessy, Austin, for Appellant.

Roy L. Bell, Law Offices of Roy Bell, Eben D. Warner, Odessa, Clifford Hardwick, Midland, for Appellee.

Before BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

The State of Texas (the State) appeals from a judgment rendered in favor of Jess E. Forrest, independent administrator of the estate of Eugene Ivory, Sr. (the Ivory Estate), awarding certain real and personal property to the Ivory Estate and Eugene Ivory, Sr.'s four children. Because we find the evidence legally insufficient to prove that Eugene Ivory, Sr. is the son and sole heir of E. Marie Torrance, we reverse and render a take-nothing judgment.

## FACTUAL AND PROCEDURAL SUMMARY

E. Marie Torrance (Torrance) died intestate in Manhattan, New York City, New York on May 23, 1959. Thomas I. Fitzgerald, the public administrator of New York County, handled the administration of Torrance's principal estate in New York. Torrance owned producing mineral interests in Ector County, Texas, and the operator of those interests, Gulf Oil Corporation, held all accrued royalties in suspense after her death. In 1972, Fitzgerald instituted ancillary administration in the County Court of Ector County.[1] After Gulf Oil refused to correspond with Fitzgerald or pay the royalty proceeds to him, Fitzgerald filed a suit for accounting against Gulf Oil in the 161st District Court of Ector County in early 1974.[2] The State intervened in the same suit and, alleging that Torrance had no heirs, filed a petition for escheat of the oil and gas interests and royalties. Due to the existence of competing claims for the accrued royalties, Gulf Oil deposited the accrued royalty payments into the registry of the district court.

Over the next several years, numerous persons came forward claiming to be heirs of Torrance. Following a bench trial in 1979, the district court found that those claimants remaining before the court[3] had failed to prove themselves to be heirs of Torrance, and consequently, her entire estate comprised of mineral interests and accrued royalties escheated to the State on the date of Torrance's death. No party to the district court action appealed that judgment.

No further proceedings took place in the ancillary administration action until a group of claimants filed an application for determination of heirship in 1988. After the State filed its answer and a plea to the jurisdiction, the constitutional county court transferred the case to County Court at Law No. 2 of Ector County. A second group of claimants then filed their application for determination of heirship in 1990. Subsequently, the county court at law granted the State's plea to the jurisdiction and dismissed both sets of claims. One group of claimants appealed the dismissal. In *In re Estate of E. Marie Torrance v. State*, 812 S.W.2d 393 (Tex.App.—El Paso 1991, no writ)(*Torrance I*), we held that the 161st District Court lacked jurisdiction to determine the issue of heirship because the county court sitting in probate had acquired exclusive jurisdiction of that issue. *Id.* at 396–97. We further held that heirship must be determined by the probate court before a judgment of escheat could be properly rendered by the 161st

1. *In re: Estate of E. Marie Torrance, Deceased,* cause number 4825-B. Throughout the remainder of the opinion, we will refer to this cause as the administration case.

2. *Thomas I. Fitzgerald, Ancillary Administrator of the Estate of E. Marie Torrance, Deceased v. Gulf Oil Corporation, et al.,* cause number B–42,011. Throughout the remain-der of the opinion, we will refer to this as the district court case or the escheat case.

3. The district court permitted some intervening claimants to withdraw their answers to the petition for escheat without prejudice to their right to prove up their respective claims as heirs.

District Court, and therefore, the county court at law erred in granting the State's plea to the jurisdiction. *Id.* Consequently, we reversed the judgment and remanded the cause to the county court at law for determination of heirship. *Id.* at 397. The State did not appeal our decision. However, the claimants who had been successful on appeal later dismissed their claim with prejudice, agreeing that they were not relatives or heirs of Torrance.

No further action occurred in the administration case until January 27, 1993, when Eugene Ivory, Sr.'s four children, Thelma Viola McDonald, Elizabeth Belcher, Eugenia Burger, and Eugene Ivory, Jr. (collectively referred to as the Ivorys), filed an application for heirship. They asserted that Eugene Ivory, Sr., who had died on March 7, 1967, was Torrance's son. Still maintaining ownership of the property by virtue of the escheat judgment, the State objected to the Ivorys' application on the ground that their failure to seek ownership of the property within the two-year statute of limitations barred their claim to the property. Subsequently, Jess E. Forrest, administrator of the estate of Eugene Ivory, Sr., filed an amended application for heirship to include the Ivory Estate in the claim.

Following a bench trial in October of 1997, the trial court found that:

● E. Marie Torrance died intestate while owning or entitled to real or personal property in Texas, including the mineral

interests located in Ector County and the royalty proceeds;

● Eugene Ivory, Sr. was the only child of E. Marie Torrance;

● Eugene Ivory, Sr. died intestate on March 7, 1967; and

● the four children of Eugene Ivory, Sr. are his sole heirs so that each of them has an equal undivided twenty-five percent interest in his estate.

Consequently, the trial court ordered that all assets of the estate of E. Marie Torrance be delivered to Jess E. Forrest in his capacity as the duly qualified administrator of the estate of Eugene Ivory, Sr. for the benefit of the named heirs. At the State's request, the trial court made written findings of fact and conclusions of law.

## SUFFICIENCY OF THE EVIDENCE

In its third issue for review, the State challenges the legal and factual sufficiency of the evidence to support the trial court's conclusion that Eugene Ivory, Sr. is the son of E. Marie Torrance.[4] Although the State acknowledges that the parties stipulated at trial that "preponderance of the evidence" is the proper burden of proof in an heirship determination, the State maintains on appeal that the correct standard is "clear and convincing evidence," and therefore, we should review sufficiency of the evidence under the heightened standard articulated in *Edwards v. Texas Department of Protective and Regulatory Services*, 946 S.W.2d 130, 137 (Tex.App.—El Paso 1997, no writ).[5]

---

4. In the context of this same point of error, the State raises a statute of limitations argument. In light of our disposition of the legal sufficiency contention, we will not reach the limitations issue or any of the other issues presented on appeal.

5. The general rule in civil cases is that the party having the burden of proof must establish its case by preponderance of the evidence. *State v. Turner*, 556 S.W.2d 563 (Tex. 1977). The clear and convincing standard of proof is applied in those civil cases which involve issues of constitutional dimension. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). In order to

establish paternal inheritance under Section 42 of the Probate Code, a court must find by clear and convincing evidence that the purported father is the biological father of the child. TEX PROB.CODE ANN. § 42(b)(Vernon Supp.1998). Section 42(a) is silent, however, with regard to the burden of proof required to establish maternal inheritance. Although the State argues in its brief that application of different burdens of proof to maternal and paternal inheritance would render Section 42 constitutionally infirm, we note with appreciation that counsel candidly admitted at oral argument that this argument is waived because it was not urged in the trial court.

Because we find that the evidence is legally insufficient to establish the Ivory Estate's heirship claim even under the lesser preponderance of the evidence standard, it would also be insufficient were we to apply the more stringent clear and convincing evidence standard. Accordingly, we need not decide the issue.

### Standard of Review

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951); *Parallax Corp., N.V.*, 910 S.W.2d at 89. However, meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934 (1998). In a bench trial, factual and legal sufficiency challenges to the trial court's findings of fact are reviewable under the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 432 (Tex.App.—Houston [14th Dist.] 1997, no writ).

### Theory of Heirship

The Ivory Estate's theory of heirship is that E. Marie Torrance was an African–American woman who changed her name and identity on two occasions around the turn of the century in order to leave the African–American community and "pass herself off as white."[6] According to the Estate, Fannie Haskell changed her name to Lizzie Lee, married Mack Ivory, gave birth to Eugene Ivory and at some point abandoned him, changed her name to Elizabeth Marie DeVelwood, and then married Crawford Torrance, a white man. While this theory is intriguing, the evidence is legally insufficient to support it.

### E. Marie DeVelwood Torrance

E. Marie Torrance maintained throughout her life that she was born Elizabeth Marie DeVelwood in Edgefield County, South Carolina on March 14, 1877. Torrance related to Ellen Seith, a close friend who had known Torrance since 1917, that she was raised in her grandfather's home in South Carolina. In 1954, Seith attended a consultation between Torrance and Oscar Thees, a New York attorney, for the purpose of drafting Torrance's will. Torrance told both Thees and Seith that her maternal grandfather, George W. Campbell, immigrated to the United States from Scotland. Campbell lived most of his life in Charleston, South Carolina, but died in Edgefield County. Her maternal grandmother, Mary Anne Campbell, died when Torrance's mother, Mary, was born. According to Torrance, Mary Campbell married James H. DeVelwood who had immigrated to the United States from France. He died only two weeks after Torrance's birth. Torrance also told Thees and Seith that she had no brothers or sisters, she had no children, and she had not heard from her mother since her marriage to Crawford Torrance. When Thees continued to question Torrance about her family history, she became agi-

---

6. The Ivorys explain that "Fannie Haskell/Lizzie Ivory were Mulatto because Margaret (Margie) Haskell Defoe was Mulatto, supporting Appellee's [sic] theory that Fannie Haskell/Lizzie Lee Ivory/Elizabeth Marie Torrance was light-complected enough to pass for white." Indeed, the 1910 census categor- izes Margie Defoe as "MU" which stands for Mulatto according to the State's genealogist, although Margie's death certificate contains the notation "Col." in the designation of race. The death certificate for E. Marie Torrance designates her race as "white."

tated and left his office. The first documentary record of Elizabeth DeVelwood is the 1905 marriage license between Crawford Torrance and Elizabeth DeVelwood which recites that they both resided in New York, New York. Consistent with her statements to Thees and Seith, Torrance reported to census takers from 1920 through 1950 that she was born in South Carolina and her father was born in France.

### Fannie Haskell

According to 1880 U.S. Census records for Bordeaux Township, Abbeville, South Carolina, the Norman Willis household included his daughter Margaret Haskell, son-in-law Dallas Haskell, and the Haskell children, a five-year-old son Alisk and three-year-old Fannie. According to the census, Fannie was born in Georgia. There is no further documentary record of Fannie Haskell. Margie Haskell subsequently married Nathan DeVoe on October 17, 1886 in Richmond County, Georgia.[7] Records from the 1900 census for Richmond County reflect that Nathan and Margie DeVoe lived with their four daughters, Mary, Martha, May E., and Annie B. This same document reveals that Margie DeVoe had given birth to ten children, but only six were alive at the time of the census. According to records from the 1910 census, Margie and Nathan DeVoe lived with their two daughters, Mary and Annie, in Harrisonville Village, Richmond County, Georgia. All six of Margie's remaining children were still alive at the time of this census. Margie DeVoe died in 1927 in Vero Beach, Florida. Nathan DeVoe died on July 30, 1931 in Augusta.

John DeVore, the grandson of Nathan DeVoe and the son of Will DeVore, was born in Edgefield County, South Carolina, in 1922. During his childhood, John DeVore would often visit his grandfather's home in Augusta, Georgia which was only eighteen miles from his home. During one of these visits in the 1930's, John DeVore was introduced to his grandfather's stepdaughter who was at the residence to see her half-sister. His father, Will DeVore, told him that E. Marie Torrance was his grandfather's stepdaughter and his father's stepsister. Approximately ten years later, he saw the same woman stepping into the subway in New York City but he did not talk to her.

### Lizzie Lee

On February 25, 1897, Lizzie Lee married Mack Ivery[8] in Augusta, Georgia. The 1900 census for Augusta, Richmond County, Georgia, reflects that a twenty-three-year-old married woman named Lizzie Ivory and her son, Eugene Ivory, lived with Lizzie's sister, Mary Fisher, and her five children. The census further shows a birth date of April 1897 for Eugene and March 1877 for Lizzie. The 1901 Augusta city directory includes a Mack Ivey who was employed by the Georgia Railroad as a porter but it does not reflect his marital status. The 1902 Augusta city directory lists two Mack Iveys, the first married to "Patience" and employed as a porter, and the second married to "Lizzie" and employed as a brakeman on the Georgia Railroad. The record before us contains no further documents pertaining to Lizzie Lee or Lizzie Ivory.

Eugene Ivory, Sr. died in Chicago, Illinois on March 7, 1967 at the age of sixty-

---

7. Nathan and Margie DeVoe spelled their last name as "DeVoe." However, Nathan DeVoe's four children from his first marriage, Tom, Laura, Elbert, and Will, utilized the spelling "DeVore." The State's genealogist referenced a variety of spellings, including "Devoe," "DeVoe," "Devore" and "DeVore." Additionally, as we noted in footnote 6, the Ivorys refer to these same individuals as "Defoe."

8. Variations of this name and spelling are found throughout the pertinent documents, "Ivery," "Ivory," and "Ivey." Our opinion reflects the spelling actually found in the pertinent documents but when referring to Lizzie or her descendants, we will utilize the spelling "Ivory."

nine. The death certificate recited that he was born in Augusta, Georgia and identified his parents as Mack Ivory and Elizabeth Lee. At trial, Eugene Ivory, Jr. related that he knew nothing of his paternal family history, including the names of his paternal grandparents, because his father had abandoned the family when he and his sisters were young. Although the junior Ivory and his father renewed their relationship during his father's last few years of life, they never discussed family history. None of the junior Ivory's three sisters testified at trial.

### The Links and the Gaps

In support of its claim that Fannie Haskell, Lizzie Lee, and E. Marie Torrance are the same person, the Ivory Estate places substantial reliance on the following "facts":

- Fannie Haskell, Lizzie Lee, and E. Marie Torrance were born at the same time and are from the same geographical area;
- Fannie Haskell and Lizzie Lee both had a sister named Mary;
- there is no record of Fannie Haskell after 1880;
- there is no record of Lizzie Lee prior to her 1897 marriage or after the entry in the 1902 Augusta city directory;
- there is no record of Elizabeth DeVelwood prior to her 1905 marriage to Crawford Torrance;
- John DeVore identified E. Marie Torrance as the stepdaughter of Nathan DeVoe, i.e., Fannie Haskell;
- Nathan DeVoe lived in 1880, prior to his marriage to Margie Haskell, in the home of a G.W. and Mary Campbell; and
- E. Marie Torrance became agitated when Oscar Thees questioned her about her family history.

We will examine these assertions in light of the record before us.

The evidence reflects that Fannie Haskell was born in 1876 or 1877 in Georgia while Lizzie Lee Ivory was born in March of 1877 in South Carolina. E. Marie Torrance was born in South Carolina on March 14, 1877. As pointed out by the Ivory Estate, the 1880 census is the only record of Fannie Haskell. Several conclusions can be drawn from this fact. According to the 1900 census, four of Margie's ten children had died. Thus, it is entirely possible that Fannie had died since 1880. On the other hand, the 1900 census record also shows that Margie had two other living children who did not reside with her, possibly Alisk and Fannie. As acknowledged by the State's expert genealogist, it is possible that Fannie, who would have been approximately twenty-three years old in 1900, had married and taken her husband's name. Finally, it is within the realm of possibility that she simply changed her name as asserted by the Ivory Estate.

We consider first the link between Fannie Haskell and E. Marie Torrance. An 1880 census record reveals that a person named Nathan DeVoe lived in the home of a G.W. and Mary Campbell. Assuming that these are the same Campbells whom Torrance claimed as her grandparents, a connection exists between the DeVoes and Torrance. If, as the Ivory Estate claims, Torrance was actually Fannie Haskell, it is plausible that she would have based her fictional family history on a real family, such as the Campbells, with whom she was familiar. Torrance's agitation when questioned about her family history would be consistent with an effort to hide her past. Standing alone, however, these facts do not establish the link between Haskell and Torrance by legally sufficient evidence. What transforms this from a merely coincidental connection to a significant one for purposes of our inquiry is the testimony of John DeVore that his father told him that Torrance was his grandfather's stepdaughter. Although Mr. DeVore did not use the name Fannie Haskell, Fannie Haskell was the only stepdaughter of Nathan DeVoe. When this evidence is considered in the

proper light, it constitutes more than a scintilla of evidence that Fannie Haskell and E. Marie Torrance were the same person.

There is absolutely no evidence, however, that Fannie Haskell ever assumed the identity of Lizzie Lee before changing her name to Elizabeth DeVelwood. In its effort to establish a link between Fannie Haskell and Lizzie Lee, the Ivory Estate points out that both Fannie and Lizzie had a sister named Mary. The 1900 census record for the Nathan and Margie DeVoe household indicates that fourteen-year-old Mary, Fannie's half-sister, lived in the home with her three sisters. Mary still lived with her parents at the time of the 1910 census. The only evidence that Lizzie had a sister named Mary is found in the 1900 census record for the Mary Fisher household which shows that Lizzie and Eugene Ivory lived with Lizzie's thirty-nine-year-old sister, Mary Fisher. Since Mary Devoe and Mary Fisher are separately listed in the 1900 census, they could not be the same person. Therefore, they provide no link between Fannie Haskell and Lizzie Lee. Further, the Ivory Estate is incorrect in asserting that there is no record of a person named Lizzie Lee prior to 1897. The 1880 census from Lydia Township, Darlington County, South Carolina, shows that Isom and Amy Lee had six children, including twenty-year-old Mary and four-year-old Lizetta.[9] The remaining evidence relied on by the Ivory Estate, that is, the absence of records of either Fannie Haskell or Lizzie Ivory after certain dates, and any similarity in the names, ages and places of birth of the three women, does not permit a conclusion that Fannie Haskell assumed the identity of Lizzie Lee or that Lizzie Lee Ivory and Elizabeth DeVelwood were the same person. While it constitutes circumstantial evidence from which equally plausible but opposite inferences may be drawn, it is nevertheless speculative and thus legally insufficient to support the finding that Eugene Ivory, Sr., a descendent of Lizzie Lee, is the son of E. Marie Torrance.

Issue Three is sustained. The judgment of the trial court is reversed and a take-nothing judgment is rendered.

9. Interestingly and perhaps not coincidentally, the ages of Lizetta and Mary Lee match the ages of Lizzie Lee Ivory and Mary Fisher.