# NO. 12-24-00091-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ESTATE OF* | *§* | *APPEAL FROM THE* |
| *JESSE ODIS MATLOCK, III,* | *§* | *COUNTY COURT AT LAW* |
| *APPELLANT* | *§* | *HOUSTON COUNTY, TEXAS* |

## *OPINION*

Dustin Matlock appeals the trial court's judgment declaring heirship concerning his deceased father's estate. He raises two issues on appeal. We affirm.

## BACKGROUND

Jesse Odis Matlock, III died on August 30, 2022, in Houston County, Texas. The trial court determined that Jesse Odis Matlock, III, died without leaving a lawful will because the document purporting to be a will failed to satisfy the legal requirements.

Dustin filed an "Application to Declare Heirship" (the Matlock Application) on November 18, 2022. The Matlock Application alleged that the decedent was survived by his wife Lisa Matlock, and five children, Jesse Matlock, IV, Jennifer Chimeil, Dillon A. Matlock, Dustin

Matlock, and Dalton Matlock.[1] The Matlock Application also alleged that decedent had another daughter, Brandy Matlock, who predeceased him and was survived by her children, Taylor Pate and Cole Pate.

Jesse IV, Jennifer, and Brandy were conceived during the decedent's first marriage. Dillon, Dustin, and Dalton were conceived during his second marriage with his surviving wife Lisa. The Matlock application also identified Lacey Theus and Ashley Veach as persons who "[m]ay claim to be a child of Decedent" with zero share in the estate.

On March 13, 2023, Lacey, Ashley, and Jesse IV, filed an "Opposition to Dustin Matlock's Application to Determine Heirship." That same day, Lacey filed a competing "Application to Determine Heirship" (the Theus Application), alleging that in addition to the six children he conceived in his two marriages, the decedent conceived two other children out of wedlock, namely Lacey and Ashley. It is undisputed that Lacey and Ashley have the same mother.

In April 2023, Lacey, Ashley, and Jesse IV, all voluntarily submitted to genetic testing.[2] It is undisputed that Jesse IV is the decedent's son. The May 2023 "LabCorp" Laboratory Corporation of America genetic testing report concluded as follows:

> This study was undertaken to evaluate if LACEY THEUS and ASHLEY VEACH are half siblings of JESSE MATLOCK IV as opposed to unrelated. The account has indicated that LACEY THEUS and ASHLEY VEACH have the same mother and that JESSE MATLOCK IV has a different mother. Given the above information, all relevant relationships were tested using Caucasian frequencies.

> In the most likely relationship, both LACEY THEUS and ASHLEY VEACH are half siblings of JESSE MATLOCK IV. This relationship is as least 49 times more likely than any other tested relationship and has a probability of 97.98% when comparing all tested relationships (prior probability = 0.2). This study supports the allegation that LACEY THEUS and ASHLEY VEACH are half siblings of JESSE MATLOCK IV.

The attorney ad litem for the unknown heirs filed a report which agreed with the Theus Application.

On January 9, 2024, the trial court held a hearing on the applications. The trial court admitted the genetic testing report into evidence over Dustin's objection that there was no showing

---

[1] Because several parties share the same surname, we will refer to all parties by their first names for the sake of brevity and clarity.

[2] The parties apparently conducted an earlier genetic test while Jesse Odis Matlock, III, was alive using his DNA, but that report was not admitted into evidence in this proceeding.

that the test and techniques were scientifically reliable or that the technique was properly applied, and that the report is hearsay.

Jesse IV testified that the decedent hosted a family gathering in 2018 at which all seven surviving children attended, along with Brandy's two surviving children, and that the decedent treated them as his children. He further explained that they all knew Lacey and Ashley were decedent's children.

Lacey testified that the decedent sent Dustin and Lisa to her home with samples of his DNA in 2017 so that she and Ashley could confirm his paternity. She explained that she knew the decedent was her father for her entire life and that he treated her as such. She testified that he provided for her financially for her entire life and that she had a father-daughter relationship with him. She further stated that although no court ever ordered that he pay child support, he provided both Lacey and Ashley with financial support through their mother for their entire lives. Lacey testified that she attended the gathering in 2018, each of decedent's surviving children attended, and that they all acknowledged each other as siblings.

Ashley also testified and confirmed that she provided a DNA sample in 2017 at decedent's request to prove to Dustin and Lisa that he was the father of Lacey and Ashley. She confirmed that the decedent sent her money, gifted her a ring, and paid for her cellphone among other things. She also explained that she attended the family gathering in 2018 and that the decedent "acknowledged everybody as his kids."

Cynthia Moretti, a friend of decedent's for nearly forty years who had no interest in the estate, testified at the hearing that decedent had eight children, including Lacey and Ashley, with three different women. Moretti testified that the decedent gave her money many times with instructions to give it to Lacey and Ashley, he asked about them over the years, and she had a meeting with the decedent (after learning he had cancer), during which he stated that he would provide for Lacey and Ashley. She further testified that the entire Matlock family knew that Lacey and Ashley were decedent's children and that they took an earlier genetic test.

After the hearing, the trial court signed a judgment declaring heirship in which it determined that the decedent had a surviving spouse Lisa, eight children including Lacey and Ashley, Brandy predeceased him, and Brandy had two surviving children. Among other things, the judgment also identified each heir's relationship to the decedent and their shares of decedent's property. Dustin appealed the judgment to this Court.

3

As an initial matter, Lacey asserts that we lack jurisdiction of this appeal because there is no final order. As support, she relies on Texas Estates Code Section 32.001, which reads in pertinent part as follows:

> (c) A final order issued by a probate court is appealable to the court of appeals.
>
> (d) The administration of the estate of a decedent, from the filing of the application for probate and administration, or for administration, until the decree of final distribution and the discharge of the last personal representative, shall be considered as one proceeding for purposes of jurisdiction. The entire proceeding is a proceeding in rem.

TEX. EST. CODE ANN. § 32.001 (West 2020).

We disagree with Lacey's contention that there is no final order. Generally, this Court has jurisdiction only over (1) final judgments and (2) interlocutory orders from which an appeal is expressly authorized by statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.012 (West 2015), 51.014(a) (West Supp. 2024); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *see also* TEX. R. CIV. P. 301 (providing that only one final judgment may be rendered in a cause). Appellate jurisdiction generally exists only in cases in which a final judgment has been rendered that disposes of all issues and parties in the case. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992).

"Probate proceedings are an exception to the 'one final judgment' rule; in such cases, 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues.'" *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (quoting *Lehmann*, 39 S.W.3d at 192). An appeal from a probate court order may be taken if it "dispose[s] of all parties or issues in a particular phase of the proceedings," or if "there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable." *Id.* at 578-79 (quoting *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995)). Specifically, here an express statute governs the appealability of the heirship judgment, which provides as follows:

> (a) The judgment in a proceeding to declare heirship is a final judgment.
>
> (b) At the request of an interested person, the judgment in a proceeding to declare heirship may be appealed or reviewed within the same time limits and in the same manner as other judgments in probate matters.

4

TEX. EST. CODE ANN. § 202.202 (West 2020). In summary, a judgment in a proceeding to determine heirship is a final judgment that can be appealed by an interested person. *See Crowson*, 897 S.W.2d at 783; *see also Dussetschleger v. Smith*, 577 S.W.2d 771, 772 (Tex. App.—Tyler 1979, no writ).

Dustin filed an application to determine heirship. Lacey also filed a competing application. The trial court determined the heirship of all the parties after an evidentiary hearing. The trial court ultimately signed a "Judgment Declaring Heirship" that satisfies all the requirements for such a judgment. Dustin, as an interested person due to his status as one of the decedent's sons, appealed from the judgment declaring heirship. Accordingly, we have jurisdiction over this appeal. *See* TEX. EST. CODE ANN. § 202.202; *Nobles v. Bill Hill Oil & Gas Prod.*, No. 12-22-00119-CV, 2022 WL 3755422, at *1 (Tex. App.—Tyler Aug. 30, 2022, no pet.) (mem. op.) (applying same statute and concluding we had jurisdiction over appeal concerning denial of application for declaration of heirship).

Lacey's contention that we lack jurisdiction is overruled.


## ADMISSIBILITY OF DNA REPORT

In his second issue, Dustin contends that the trial court abused its discretion in admitting the LabCorp genetic testing report into evidence.

## Standard of Review

We review evidentiary rulings under the abuse of discretion standard of review. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (citing *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001)); *see also In re Wallace*, No. 03-10-00555-CV, 2013 WL 4817740, at *6 (Tex. App.—Austin Aug. 28, 2013, pet. denied) (mem. op.) (applying abuse of discretion standard of review in heirship proceeding concerning the admissibility of genetic testing report). The test for abuse of discretion is whether the trial court's ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998)). "Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing TEX. R. APP. P. 44 .1; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)).

**Applicable Law**

The Texas Estates Code provides a detailed procedure for genetic testing to assist the court in determining the proper heirs of an intestate decedent. *See generally* TEX. EST. CODE ANN. §§ 204.001-.251. The trial court *may* order genetic testing for one or more specified individuals on its own motion and *must* do so upon the request of a party to the proceeding. *Id.* § 204.051 (West 2020). Unless otherwise assessed under Texas Rules of Civil Procedure 131, the cost of the genetic testing must be advanced: (1) by a party to the proceeding who requests the testing; (2) as agreed by the parties and approved by the court; or (3) as the court orders. *Id.* § 204.052 (West 2020).

If genetic material of the individual to be tested is not available, the court may order the testing of the individual's family members (e.g., parent, sibling, child, or other relative) if the court: (1) makes a finding of good cause; and (2) determines that the need for genetic testing outweighs the legitimate interest of the individual to be tested. *Id.* § 204.054 (West 2020). Additionally, if good cause is shown, the court may order the genetic testing of a deceased individual and order the disinterment of the deceased individual's remains to facilitate the testing. *Id.* § 204.055 (West 2020).

Assuming the report of the genetic testing complies with Texas Family Code Section 160.504, the report is admissible "as evidence of the truth of the facts asserted in the report." *Id.* § 204.101 (West 2020). Specifically, Section 160.504 provides:

> (a) A report of the results of genetic testing must be in a record and signed under penalty of perjury by a designee of the testing laboratory. A report made under the requirements of this subchapter is self-authenticating.
>
> (b) Documentation from the testing laboratory is sufficient to establish a reliable chain of custody that allows the results of genetic testing to be admissible without testimony if the documentation includes:
>
> (1) the name and photograph of each individual whose specimens have been taken;
>
> (2) the name of each individual who collected the specimens;
>
> (3) the places in which the specimens were collected and the date of each collection;
>
> (4) the name of each individual who received the specimens in the testing laboratory; and
>
> (5) the dates the specimens were received.

TEX. FAM. CODE ANN. § 160.504 (West 2022).

6

The rules in Texas Family Code Section 160.505 regarding the interpretation of genetic tests and how to rebut the results of the tests apply in the determination of heirship context. *Id.* §§ 204.102(1) (West 2020), 204.152 (West 2020). Under Texas Family Code Section 160.505, a rebuttable presumption that a man is a child's father arises if the results of genetic testing indicate (1) a 99% probability of the man's paternity and (2) a combined paternity index of at least 100 to 1. TEX. FAM. CODE ANN. § 160.505(a) (West 2022). The presumption can be rebutted only by other genetic testing that excludes the person as a genetic parent or identifies another person as possibly being the child's parent. *See* TEX. EST. CODE §§ 204.102(2), 204.152 (West 2020); TEX. FAM. CODE § 160.505(b).

If a party contests the results of the genetic testing and requests additional testing, the court must order additional genetic testing. TEX. EST. CODE § 204.053(a). However, if the party is contesting a positive finding of an individual as an heir of the decedent, the court may order the additional testing only if the contesting party pays in advance for the additional testing. *Id.* § 204.053(b) (West 2020). If a person refuses to submit to genetic testing as ordered by the court, the court may enforce the order by contempt. *Id.* § 204.051. A party who contests the results may call genetic testing experts to testify in person or by other means (e.g., telephone, videoconference, or deposition) but must bear the cost of the expert testifying unless the court orders otherwise. *Id.* § 204.103 (West 2020).

If the genetic tests do not identify or exclude a tested individual as an ancestor, meaning that the test is inconclusive, then the court: (1) may not dismiss the proceeding to declare heirship; and (2) must admit the results of the genetic testing in the proceeding. *Id.* § 204.153 (West 2020).

**Discussion**

At trial, Dustin objected to the report's admissibility on numerous occasions on grounds that Lacey made no showing that the test and techniques were scientifically reliable, the technique was properly applied, and the report is hearsay. These objections are inapposite.

First, the statute expressly states that a genetic testing report is admissible as evidence of the truth of the facts asserted in the report provided that it satisfies the requirements of Texas Family Code Section 160.504. *See* TEX. EST. CODE ANN. 204.101. Section 160.504 likewise states that the report is "self-authenticating," and the results are admissible "without testimony" if the report satisfies the statutory requirements. TEX. FAM. CODE ANN. § 160.504. In other words, the statute provides that so long as the statutory prerequisites are shown, the report is self-

authenticating, is not hearsay, is admissible for the truth of the matter asserted, and no testimony, expert or otherwise, is required to establish its admissibility. The statute has five requirements that the report must satisfy, all of which are clearly met here.

Specifically, in this case, the reports of the results of DNA genetic testing provided to the trial court as evidence were in a record, signed under penalty of perjury by a designee of the testing laboratory that makes the reports self-authenticating. It established a reliable chain of custody allowing the trial court to admit it without testimony because it included the name and photograph of individuals whose specimens were taken: Lacey, Ashley, and Jesse IV, who provided their government-issued photo ID's, photographs, and fingerprints at the time the samples were collected. The report also includes the names of uninvolved third parties who collected the specimens, the date of each collection, the name of the individual who received the specimen in the testing laboratory and the dates received by LabCorp., Laboratory Corporation of America. Therefore, the DNA genetic test results are self-authenticating and reliable non-hearsay supporting that Lacey and Ashley are half-siblings of Jesse IV. *See id.* § 160.504 (b)(1)-(5).

Dustin also contends that the trial court "retroactively gave effect to a genetic test it had not ordered." Dustin claims that this was somehow improper. We disagree. The trial court made an affirmative finding to order testing at the January 9 hearing as a formality even though the testing had already been completed and paid for by the testing parties. In any event, the procedures and rules governing genetic testing in heirship proceedings apply regardless of whether the individual voluntarily submits to testing or is tested by order of the trial court. *See* TEX. EST. CODE ANN. § 160.501 (West 2022). Similarly, "the admissibility of the report is not affected by whether the testing was performed: (1) voluntarily or under an order of the court[,] . . . or (2) before or after the date of commencement of the proceeding." *Id.* § 160.621 (West 2022). Here, Lacey, Ashley, and Jesse IV voluntarily underwent testing prior to the heirship proceeding and the report's admissibility is unaffected thereby. *See id.* §§ 160.501, 160.621.

Finally, we note that the genetic testing report was filed with the trial court on May 17, 2023. The heirship hearing took place on January 9, 2024. Dustin had ample notice that the parties voluntarily underwent genetic testing and knew of the report's existence and results well before the hearing. Dustin had every opportunity to contest the results of the testing in accordance with the statutory procedures but failed to do so other than lodge objections when they were offered concerning the report's reliability and hearsay. *See In re Wallace*, 2013 WL 4817740, at *7–8

8

(holding under predecessor statute that contestant had opportunity to present testimony from persons performing genetic testing or other expert testimony to contradict the report, but failed to do so, and accordingly, report provided sufficient proof of heirship).

Accordingly, Dustin's second issue is overruled.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first issue, Dustin contends that the evidence is legally and factually insufficient to support the trial court's finding that Lacey and Ashley are heirs.

**Standard of Review**

Generally, a judgment declaring heirship is reviewed for legal and factual sufficiency. *See In re Estate of Torrance*, 991 S.W.2d 98, 100–01 (Tex. App.—El Paso 1999, no pet.); *see also In re Estate of Collier*, No. 09-10-00263-CV, 2011 WL 2420989, at *2-3 (Tex. App.—Beaumont 2011, no pet.) (mem. op.). If the judgment includes a determination of a person's right to inherit as or through a biological child of the decedent and the decedent is not the presumed father, that determination is reviewed using the legal and factual sufficiency analysis appropriate for matters requiring clear and convincing evidence. *See* TEX. EST. CODE ANN. § 201.052(d); *In re Estate of Wallace*, 2013 WL 4817740, at *5; *cf. In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (termination of parental rights).

"Clear and convincing evidence is 'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (citing *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)); *see also In re J.F.C.*, 96 S.W.3d at 264–66 (discussing legal and factual sufficiency review when clear and convincing standard of proof); *In re Wallace*, 2013 WL 4817740, at *5 (applying clear and convincing legal and factual sufficiency analysis in heirship proceedings).

When reviewing the legal sufficiency of the evidence in this circumstance, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable

factfinder could have disbelieved or found to have been not credible, but we do not disregard undisputed facts. *Id.* Evidence that does no more than raise surmise or suspicion is not sufficient unless that evidence can produce a firm belief or conviction that the allegation is true. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient, and we must reverse. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id.* Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.— El Paso 1997, no writ). The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

Dustin's issues also raise matters of statutory construction, which we review de novo. *See Tex. Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex.2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g*

***Consultants, Inc. v. Pochucha***, 290 S.W.3d 863, 867 (Tex.2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. ***City of Rockwall v. Hughes***, 246 S.W.3d 621, 625–26 (Tex .2008)). We consider the entire act, not isolated portions. ***20801, Inc. v. Parker***, 249 S.W.3d 392, 396 (Tex.2008).

**Applicable Law**

Generally, when a person dies intestate, an ownership interest in the decedent's property vests in the decedent's heirs immediately upon death. *See* TEX. EST. CODE ANN. §§ 101.001(a)(3), (b) (West 2020), 202.002(1) (West 2020); ***Woodward v. Jaster***, 933 S.W.2d 777, 780 (Tex. App.— Austin 1996, no writ). To establish who the heirs are and the property they are entitled to, a person must apply for a judicial determination of heirship. *See* TEX. EST. CODE ANN. § 202.001 (West 2020). A person claiming to be a creditor or the owner of all or part of the decedent's estate has standing to apply for the determination. ***Id.*** § 202.004(2) (West 2020).

In relevant part, the heirship proceeding requires as follows:

> (b) Except as provided by Subsection (c), in a proceeding to declare heirship, testimony regarding a decedent's heirs and family history must be taken:
>
> (1) from two disinterested and credible witnesses in open court
>
> . . . .
>
> (c) If it is shown to the court's satisfaction in a proceeding to declare heirship that, after a diligent search was made, only one disinterested and credible witness can be found who can make the required proof in the proceeding, the testimony of that witness must be taken:
>
> (1) in open court . . . .

***Id.*** § 202.151 (West Supp. 2024). Once a judgment declaring heirship has been obtained, third parties can rely on it and are protected in their dealings with the estate's personal representative or the decedent's heirs. *See id.* §§ 202.204 (West 2020), 202.205 (West 2020).

**Discussion**

Dustin contends that the evidence is legally and factually insufficient to support the trial court's finding that Lacey and Ashley are heirs because only one disinterested witness (Moretti) testified at the hearing, which violates Texas Estates Code Section 202.151. Lacey responds that she satisfied the statutory requirement for two disinterested and credible witnesses through Moretti's and Jesse IV's in-court testimony. Her argument continues that Jesse IV, although an

heir, will have a smaller share in the estate if she and Ashley are heirs, thus he is a disinterested and credible witness.

We hold that we need not resolve this question. No party disputes that Moretti was a disinterested and credible witness. The trial court did not expressly find that it was satisfied that after a diligent search, only one disinterested and credible witness could be found to make the required proof. However, in this case, none of the parties requested the trial court to make findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296 (requiring request for findings and conclusions to be filed within twenty days after judgment is signed). Where no party requested such findings, appellate courts imply that the trial court made all fact findings necessary to support its judgment. *See **Sixth RMA Partners, L.P. v. Sibley***, 111 S.W.3d 46, 52 (Tex. 2003); ***Black v. Dallas Cnty. Child Welfare Unit***, 835 S.W.2d 626, 631 n. 10 (Tex. 1992). We affirm the judgment "if it can be upheld on any legal theory that finds support in the evidence." ***Worford v. Stamper***, 801 S.W.2d 108, 109 (Tex. 1990); *see **Point Lookout W., Inc. v. Whorton***, 742 S.W.2d 277, 278 (Tex. 1987).

Therefore, we hold that even if Jesse IV was not a disinterested and credible witness, the trial court impliedly found that Moretti was the only available disinterested and credible witness to make the required showing, which is permitted to provide sufficient proof under the express language in the statute. TEX. EST. CODE ANN. §§ 202.151(c); *see also **In re Wallace***, 2013 WL 4817740, at *5 (applying implied finding rule to heirship determination and concluding that heir established paternity inheritance rights by clear and convincing evidence); ***In re Estate of Collier***, 2011 WL 2420989, at *3 (same).

In any event, we have held that the DNA report was admissible evidence, which provides sufficient proof that Lacey and Ashley are heirs of the decedent. The report's result does not automatically establish the rebuttable presumption of paternity. This is because the results fall short of the 99% probability of the man's paternity and a combined paternity index of at least 100 to 1. *See* TEX. FAM. CODE ANN. § 160.505(a). Here, the report concluded that Lacey and Ashley were likely to be Jesse IV's half-siblings because "this relationship is as least 49 times more likely than any other tested relationship and has a probability of 97.98% when comparing all tested relationships (prior probability = 0.2)." Even though the testing result falls short of creating the rebuttable presumption, it is still competent evidence of paternity. *See* TEX. EST. CODE ANN. § 204.153. Furthermore, we conclude that the trial court impliedly found that the decedent's genetic

material was not available, good cause authorized the collection and usage of Jesse IV's DNA as an undisputed son of the decedent to be used in place of the decedent's genetic material, and the need for testing outweighed any interest of the individuals to be tested. *See id.* § 204.054.

This evidence, coupled with Moretti's testimony and the other evidence provided through the testimony of Lacey, Ashley, and Jesse IV, is clear and convincing evidence to support the heirship determination. Dustin provided no evidence to the contrary, even though he knew of the report's existence. In summary, we hold that a reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, namely that Lacey and Ashley are heirs of Jesse Odis Matlock, III. *See In re K.M.L.*, 443 S.W.3d at 113. Similarly, after considering the entire record, we hold that the disputed evidence that a reasonable factfinder could have credited in favor of the finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that they are heirs of the decedent. *See In re J.F.C.*, 96 S.W.3d at 266.

Dustin's first issue is overruled.

## DISPOSITION

Having overruled Dustin's two issues, the trial court's judgment declaring heirship is *affirmed*.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 20, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 20, 2024**

**NO. 12-24-00091-CV**

**ESTATE OF JESSE ODIS MATLOCK, III,**
Appellant

Appeal from the County Court at Law
of Houston County, Texas (Tr.Ct.No. 10227)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, Dustin Matlock, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*